359 So.2d 1006 (1978)
Succession of Mrs. Augusta Leland, wife of George Evans BURGESS.
No. 8794.
Court of Appeal of Louisiana, Fourth Circuit.
April 11, 1978.
Rehearing Denied May 10, 1978.
*1009 George E. Burgess, Jr., in pro. per.
Mrs. Lenore W. Burgess, in pro. per.
F. F. Willoz, III, New Orleans, for appellee, Michael W. Burgess.
Monroe & Lemann (Thomas B. Lemann), Arthur L. Ballin, Frank Dudenhefer, New Orleans, for appellees, William A. West, Whitney Nat. Bank.
Before GULOTTA, BOUTALL and SCHOTT, JJ.
SCHOTT, Judge.
George E. Burgess, Jr., hereinafter referred to as appellant, has appealed from a summary judgment in favor of Whitney National Bank and William West, hereinafter referred to as executors and in favor of Michael W. Burgess. The same judgment denied a motion for partial summary judgment filed by appellant. The proceedings have been complex so that summary of past developments may be of assistance.
Decedent who was appellant's mother, died on February 28, 1971, and her will dated May 8, 1966, and codicil dated March 9, 1970, were admitted to probate.
On May 24, 1971, appellant filed a petition for declaratory relief against the executors only seeking by summary process to obtain, 1) a declaration that certain provisions of his mother's will, which placed the legitime in trust and burdened it with a usufruct in favor of his father, are null and void; 2) an order that the executors turn over to him the legitime free and clear of the trust and the usufruct; and 3) in the alternative, a declaration that certain provisions of the will and codicil are null and void. On July 9, 1971, the executors filed answer to this petition and rule to show cause.
On April 30, 1971, appellant filed a supplemental and amended petition in which he joined as additional defendants his father, George E. Burgess, Sr., and his two sons, Michael W. Burgess and George E. Burgess, III. He prayed for a reduction of inter *1010 vivos donations and testamentary bequests in order that his legitime might be satisfied, a declaration that the net estate for computation of his legitime be based upon one-third of his mother's separate estate after deducting only its pro rata share of taxes and charges as distinguished from the method of computations set out in paragraph 11 of his mother's will, and distribution to him of his legitime free and clear of the usufruct or trust provisions in favor of his father. He asked that the three trusts created in the will be declared null and void, or in the alternative that they be modified to eliminate certain provisions which he alleged were contrary to the law.
On May 16, 1973, all defendants, except Michael Burgess, filed a rule against appellant to show cause why the order permitting the filing of his supplemental and amended petition should not be set aside, and on October 15, 1973, the trial court rendered judgment making this rule absolute, whereupon appellant filed a motion for a new trial.
On October 18 and October 29, 1973, appellant filed additional amending petitions reiterating the prayer of his original petition and joining as additional defendants five individuals, including his wife Lenore Burgess, who were legatees under his mother's will and codicil. He filed a rule against all defendants to show cause why these amending petitions should not be filed.
On March 4, 1974, the trial court denied the motion for new trial as to his judgment of October 15, 1973, by which the first supplemental and amended petition had been stricken and he dismissed appellant's rule to show cause why his October amending petitions should not be filed thereby disallowing those amending petitions. The trial judge thereafter refused to grant appellant a suspensive appeal from this judgment of March 4, whereupon he applied for and was granted supervisory writs by this court. In our opinion, on May 10, 1974, at 295 So.2d 89, La.App., we ordered that the trial judge grant appellant a suspensive appeal from that judgment of March 4, and on August 28, 1974, the Supreme Court refused writs at 299 So.2d 360.
In our opinion of December 9, 1975, at 323 So.2d 914, on the appeal from the March 4, 1974, judgment we reversed this judgment and ordered the filing of all of the amending petitions.
On February 12, 1976, an answer was filed by all defendants, except Michael and Lenore Burgess, generally denying appellant's allegations and specifically contending that the appellant had no cause of action for an attack on the residual trust or a reduction of inter vivos donations. A separate answer was filed on February 27, 1976, by Michael Burgess containing a general denial of appellant's allegations and a disassociation from all of the other defendants in the case. He also reconvened against the executors and his grandfather for a declaration that paragraph 11 of his grandmother's codicil be declared null and void. On April 6, 1976, Lenore Burgess filed an answer containing a general denial of appellant's allegations, but at the same time purporting to go along with appellant.
Against this procedural background appellant filed a motion for summary judgment on April 6, 1976, against all defendants. He suggested that numerous articles in his mother's will and codicil were contrary to specific constitutional and statutory provisions as well as the jurisprudence, and that the will and codicil as a whole were illegal in that they were contrary to public policy and contra bonos mores. He argued that the illegality of so many specific articles demonstrated an overall illegal intent on the part of the testatrix and since the many illegal provisions could not be deleted or separated from the will and codicil without defeating the testatrix' intent, a judgment of the total invalidity of the will and codicil and all trusts was in order. However, in his prayer appellant specifically asked that the court simply declare all of the specific articles null and void and "withhold any remedy or further action until the final disposition of [his] petitions." Thus, the order to the defendants to show cause was "why judgment should not be rendered herein declaring the invalidity and illegality *1011 of the [enumerated] articles of the will and codicil thereto, and nullifying them, reserving to this court until final disposition of this litigation, the decision on the remedy and the total and particular effects of much nullification and illegality."
On April 12 Michael Burgess filed a motion for summary judgment against the executors to show cause why paragraph 11 of the codicil should not be declared null and void and deleted from the trust.
On April 10, 1976, all defendants, except Michael and Lenore Burgess, filed a rule against appellant and Michael Burgess, in which they took the position that there was no issue of material fact involved in the case since the rights to be determined "solely and exclusively flow from decedent's last will and testament and the codicil thereto. . ." They also made the following allegation in their motion:
"While Movers submit and maintain that all provisions of the Decedent's Testament and Codicil are valid and sustainable under the law of the State of Louisiana, and in particular, the Louisiana Civil Code and Louisiana Trust Code, in order to eliminate the extent of the herein litigation and thereby resolve any doubt as to the meaning of the Testament and Codicil in favor of George E. Burgess, Jr. and Michael W. Burgess, and as the validity of the essential provisions of the Testament and Codicil are thereby not affected, Movers respectfully submit that the Court may modify and amend the Testament and Codicil of the Decedent in the following respects, to wit:"
Thereafter they suggested that certain specific articles of the will and codicil[1] be interpreted in a specific manner and that other articles be treated as null and void, including Article 11 of the Codicil.
Defendants made the following additional contentions in their motion: Relying on LSA-R.S. 9:2251, other provisions of the law, and W 15(f)[2] the court has the inherent authority to modify the will and codicil in the particulars suggested by defendants without affecting the validity of the instruments or the validity of the trusts established therein. They specifically denied that the will and codicil contained any prohibited substitutions, contended that the residual trusts were valid and sustainable under the law and that the legitime may be placed in trust under R.S. 9:1841, rejected certain factual allegations of appellant to the effect that an implementation of the trust would deprive him of any income, took the position that even if it did this would not invalidate the trust, and asked that the court include in its decree language which would address itself to appellant's attack on the establishment and implementation of the trust. In their prayer they asked the court to declare as follows:
"1. The trust imposed by the Testatrix on the legitime of petition is valid, subject to the modifications of certain provisions by the herein judgment.
"2. That the residual trusts established by the Decedent in her Last Will and Testament and Codicil thereto naming George E. Burgess, Sr. as income beneficiary of both trusts, and Michael W. Burgess as principal beneficiary of one of the residual trusts and George E. Burgess, III as principal beneficiary of the other residual trust, to be valid.
"3. The usufruct bequeathed by the Decedent to George E. Burgess, Sr., over the legitime of petitioner bequeathed by her in trust, is a valid and legal disposition insofar as it applies to that portion of such legitime in trust which is composed of community property; that portion of the legitime in trust bequeathed by Decedent to petitioner which consists of Decedent's separate property, if free and clear of any usufruct or income rights, and the *1012 income accruing from such separate property shall be distributed by the trustees to petitioner in accordance with the provisions of Article Eleven of Decedent's Last Will and Testament.
"4. The following provisions of Decedent's Last Will and Testament to be modified as follows:
"A. That part of the provision of the Eleventh Article, paragraph (b) of Decedent's Last Will and Testament, reading:
`. . . provided, however, that I specifically instruct the trustee not to sell any stock of St. Charles Air Line Lands, Inc., or Ranger Land Company or any lands which form part of this trust, except if so instructed in writing by the investment advisors . . .'
be declared to be null and void and of no effect, and shall be considered as not having been written.
"B. The provisions of the Fifteenth Article, paragraph (d) of Decedent's Last Will and Testament shall relieve the trustees from liability only to the extent permissible by R.S. 9:2206.
"C. The provisions contained in the Fifteenth Article, paragraphs (a), (g), and (h), of Decedent's Last Will and Testament be declared to be null and void and of no effect, and shall be considered as having not been written.
"D. The provisions of the Twelfth Article of Decedent's Codicil be declared to be null and void and of no effect, and shall be considered as having not been written, except that part of said provision which reads:
`The corporate trustee is authorized and directed to employ a qualified investment advisor.', shall remain in full force and effect.
"E. The provisions of Article Five, paragraph (b) of Decedent's Last Will and Testament, as amended by the Second Article of Decedent's Codicil, and Article Eleven, paragraph (g) of Decedent's Last Will and Testament in conjunction with the provision of Article Eleven (i) shall be interpreted to the effect that petitioner's legitime in trust shall be computed according to law and shall include one-third of Decedent's interest in the community property previously belonging to the community of acquets and gains between Decedent and her surviving husband, George Evans Burgess, Sr., and one-third of Decedent's separate property, and also one-third of such gifts made by Decedent during her lifetime which are subject to fictitious collation, but only insofar as that one-third of such gifts exceeds gifts made to petitioner, less, however, the amount of inheritance taxes due to the State of Louisiana applicable to the legitime in trust and less one-third of:
(i) All debts of Decedent;
(ii) All Federal and State Estate Transfer taxes;
(iii) All administration expenses; and the executors of Decedent's Last Will and Testament be instructed to determine petitioner's legitime accordingly.
"F. The provisions contained in Article XI of the Decedent's Codicil be declared to be null and void and of no effect, and shall be considered as having not been written, but only insofar as they authorize invasion of principal."
The order to appellant and Michael W. Burgess was to show cause why there should not be judgment in favor of defendants "in accordance with the prayer of the foregoing Motion."
The trial court ordered "that the summary judgment, filed on behalf of Whitney National Bank and William West, is maintained only as to the validity of the will and the codicil, except as to Article XI of the Codicil dated March 9, 1970." He maintained the motion for summary judgment filed by Michael Burgess and denied the motion filed by appellant.
*1013 In his reasons for judgment he stated that his primary problem was to determine whether or not the will and codicil were valid and he outlined the positions of the parties to be as follows:
The executorsthat the will and codicil are valid:
Appellantthat there may be some valid provisions in the will and codicil, but since so much of them had to be changed or interpreted the will and codicil are essentially null and void;
Michael Burgessthat C 11 was null and void.
He stated that his duty was to implement the intention of the decedent as expressed in her will and codicil. Since the executors and Michael Burgess agreed that C 11 was invalid, summary judgment of the executors would be maintained "only as to the validity of the will and codicil, except as to Article XI of the codicil."
The judgment presents a problem which should be addressed at the outset. The motion for summary judgment filed by the executors did not ask that the will be declared valid as written, but rather that a number of provisions be interpreted or declared null and void along with those provisions of C 11 "insofar as they authorize invasion of principal." Thus, in maintaining the validity of the entire will only with the exception of C 11, the trial judge did not grant the same relief which the executors sought. It is true that appellant sought a declaration that numerous articles of the will and codicil be declared null and void, but to the extent that he sought a declaration of nullity as to the same articles which the executors, in their motion forsummary judgment, agreed to have annulled, it would seem that appellant is entitled to have the motion for summary judgment amended at least to the extent of reflecting that the will is valid except with respect to those articles which the executors have agreed might be amended or annulled. Furthermore, since the judgment's declaration of C 11's invalidity as a whole goes beyond the limited declaration regarding C 11 which executors sought, their failure to appeal from the judgment makes it final from their point of view. LSA-C.C.P. Art. 2133.
Further, to clarify the posture of the case as it is now before us, we do not consider this appeal as presenting the possibility of granting appellant's motion for summary judgment. Since an appeal does not lie from the court's refusal to grant a summary judgment, C.C.P. Art. 968, we will only consider appellant's appeal from the standpoint of the summary judgment in favor of the executors, and as has already been stated we consider that summary judgment within the parameters of the relief sought by those executors and no further, i. e., with the understanding that certain of the provisions of the will and codicil are considered null and void, and what effect that might have on the validity of the will as a whole.
At the outset it must be understood that appellant takes sharp issue with this approach. Generally speaking, appellant is seeking to have the entire will declared null and void and his mother's succession administered as an intestate succession so that he would inherit all of his mother's estate free and clear of the usufruct in favor of his father beyond what C.C. Art. 916 confers and the trusts established under the will and codicil and subject only to decedent's debts, taxes and some particular legacies which were made. He has filed in this court, as he did in the trial court, voluminous briefs and exhibits which contain a multi-faceted attack on the will organized in such a way that his position is extremely difficult to summarize in an opinion of reasonable length and conciseness.
As a starting point, however, we refer to the prayer with which he concluded the original brief (over 200 pages in length) he filed in this court. He asks us to reverse the judgment of the trial court declaring the will and codicil valid, nullify each of some 18 individual articles or parts thereof of the will and codicil, declare two residual bequests in trust to decedent's grandchildren null and void because they contain prohibited substitutions and because they *1014 have uncertain beneficiaries and legatees, declare each of of the three bequests in trust null and void because their purposes are destroyed by the deletion of invalid articles and because they have immoral purposes, declare that he as the sole legal heir inherits all of the assets as an intestacy free and clear of any encumbrances, declare the particular legacies to five individuals, including his wife, valid provided the major bequests are nullified, declare the testamentary interest left to the surviving spouse null and void as an excessive donation or lost with the nullification of the three major trust bequests, and limit the surviving spouse to the usufruct on the particular bequests. He also alternatively prays that the establishment of the trust in which he is the principal beneficiary be nullified as an impingement on his legitime, that the case be remanded to the trial court for the purpose of making a proper computation of his legitime, for a decree that he is entitled to his legitime on his mother's separate property free and clear of all encumbrances with an order to the trial court to make a proper computation of the amount he is due thereon, for a reduction of the amounts left to the surviving spouse to the extent that they impinge on his legitime, and that the case be remanded for trial to show that the trust amounted to his complete or substantial disinheritance in violation of the constitution and the laws of the state.
Appellant's request that we remand the case to the trial court on the last mentioned issue is somewhat difficult to understand in light of his own pleadings in this case. He filed a motion for summary judgment asking that the will be declared invalid and argued that a reference to the provisions of the will and codicil themselves is sufficient to establish that his mother intended to disinherit him and, therefore, as a matter of law the will is invalid. Now he asks that the case be remanded to take evidence on this point, but he does not in any of his arguments indicate what kind of evidence might be obtained which has any bearing on the question. We have resolved to consider this argument as appellant himself has consistently advocated, i. e., the question can be resolved on the reading of the will and a consideration of the spirit of the law which confers the rights of a forced heir.
Appellant's argument on this point is based on provisions of decedent's will and codicil which name his father executor, spell out the manner in which his legitime is to be computed, confer a usufruct in favor of his father on community property as well as separate property, place his legitime in trust with his father as the income beneficiary, name his father investment advisor for the trustees along with another individual with such powers so as to exercise complete control over the trustees, establish additional trusts for the residual estate with his father as the income beneficiary, and create a situation which would enable his father to dissipate these residual trusts which are ostensibly for the ultimate benefit of decedent's grandchildren, i. e., the two children of appellant. He charges that the method of computation of the estate as set out in the will and codicil would result in his never deriving any income whatsoever from his mother's estate but would relegate him to ownership in trust of an undivided interest in non-income producing marsh land for the duration of his life.
Apparently the executors recognized that some of his attacks on individual articles had merit which led them to ask the trial court to delete these provisions as null and void. Appellant is not satisfied with this result because he takes the position that the deletion of these articles along with others which he claims are null and void, has the effect of frustrating the intent of the testator, so that the entire will should be annulled with the deletion of these illegal provisions. In other words, he argues that his mother intended an immoral result, namely, to deprive him of his legitime or to disinherit him and these null and void articles were deliberately incorporated in her will and codicil in order to accomplish this purpose. Since deletion of the articles prevents the accomplishment of her intent the only solution is to nullify the entire testament.
*1015 To dispose of this argument at the outset, it is quite clear from a reading of decedent's last will that it was her intention to give as much as possible to her husband and as little as possible to her son. From appellant's point of view, this makes her purpose immoral. We do not agree that this follows and appellant can cite no authority for his point of view. His argument that the law of Louisiana and its traditional sources favor the concept of forced heirship and are inconsistent with some of the provisions which his mother incorporated in her will does not lead to the conclusion that the entire will must be nullified because of some sinister intent on his mother's part.
The Civil Code recognizes the possibility that donations might exceed the disposable portion and thereby impinge on the legitime due a forced heir, and in such a case it provides him with the remedy of reduction of the excessive donations. LSA-C.C. Art. 1502, et seq.
Furthermore, our impression of the testator's intent is not the same as appellant's. Her intent was not immoral but perfectly acceptable, i. e., give as much as the law allowed to her surviving spouse. In making certain changes or deletions from the will this overriding intent is protected and implemented. This point will be more obvious in the discussion which follows.
Finally, appellant's argument to the effect that the nullification of the illegal provisions of the will leaves nothing but a few mechanical paragraphs with the substance of the will gone presupposes that these articles in their entirety are null and void. As will be seen from our discussion, the elimination of certain provisions from the will does not nullify the entire section or paragraph in which such a provision is found and the substance of the will remains intact after these changes are made.
Three specific, major lines of attack on the will can be separated from appellant's wide ranging arguments. These are based on theories that 1) under the terms of the will and codicil his legitime is impinged upon; 2) residual trusts established for decedent's grandchildren are invalid, and 3) provisions which conferred benefits on the surviving spouse as usufructuary, income beneficiary and investment advisor are invalid. We now proceed to a discussion of these issues.

THE LEGITIME
The following provisions of the will and codicil are here pertinent:
Will 5 "(a) I direct that all my just debts, funeral expenses and costs and expenses of the administration of my estate, be paid out of my one-half interest in the community property belonging to my husband and myself, and that one-half of the indebtedness of the community estate to my separate estate be paid out of my one-half interest in said community property.
(b) I direct that my executor pay all death, succession, transfer, estate and inheritance taxes, Federal and State, levied or assessed upon or with respect to any property which is included in my estate for purposes of computing any such taxes, out of my residuary estate, to-wit: If my husband survives me, out of the one-half of my separate property not devised to my husband, and if the same is insufficient, out of my one-half interest in the community property, or, if my husband predeceases me, out of my residuary estate, I further direct that neither my executor nor my estate shall have right or claim to reimbursement for such taxes from any person who is a beneficiary, transferee, legatee or devisee of any property upon or with respect to which any such tax is assessed or levied, it being my intention that said persons receive their legacies in full."
Codicil 2 "I desire to, and herewith do, add the following provision to sub-paragraph (b) of the Fifth Article of my last will and testament dated May 9, 1966, to-wit: The legitime of my son, GEORGE EVANS BURGESS, JR., which I am bequeathing to him, but in trust only, as more fully set forth in the Eleventh Article of my last will and testament of May 9, 1966, shall be charged with the proportionate amount of Federal Estate Taxes applicable to the *1016 property constituting said legitime, and with the State of Louisiana Inheritance Taxes assessed and levied upon his said inheritance (legitime), and such amounts of Federal Estate Taxes and State of Louisiana Inheritance Taxes shall be deducted from his legitime."
Will 6 "I confirm the usufruct which my husband, George Evans Burgess enjoys under the law, to my interest in the community property which we own at the time of my death, which usufruct shall cease at the time of his death or remarriage."
Will 7 "I give and bequeath to my husband, George Evans Burgess, one-half (½) of my separate estate."
Codicil 4 "I give and bequeath to the following named persons the following special legacies in the amounts hereinafter set forth, all subject to the legal usufruct of my husband, George Evans Burgess, which is hereby confirmed and which legacies shall be payable upon my said husband's death or remarriage without interest, to-wit:
To my niece, Mrs. Gene Kenny Rodgers, Thirty thousand dollars ($30,000.00); to my nephew, James Preston Kenny, Jr., Thirty thousand dollars ($30,000.00); to my brother, Jonte Victor Leland, Thirty thousand dollars ($30,000.00); to my daughter-in-law, Mrs. Lenore Williamson Burgess, Ten thousand dollars ($10,000.00).
I relieve and release my said husband from the necessity of furnishing security or bond or separate inventory of the property subject to the usufruct herein confirmed and granted in his favor.
In the event any of the legatees herein named should predecease me, the bequest made to such predeceased legatee shall be come null and void and shall be considered as not having been made."
Will 11 "To provide for the legitime to which my son, George Evans Burgess, Jr., is entitled and to which I herewith restrict his interest in my estate, I make the following provision, to-wit:"
Codicil 6 (Amending will 11) "I desire to, and do herewith, amend the provision of paragraph (a) of the Eleventh Article of my last will and testament of May 9, 1966, to read as follows: `I give and bequeath to The Whitney National Bank of New Orleans, Louisiana, a Louisiana corporation, and William A. West, as Trustees, to hold in trust as set forth below, one-third of my net estate as hereinafter defined for the benefit of my husband, George Evans Burgess, as income beneficiary, hereby recognizing and confirming his usufruct thereon, and for the benefit of my son, George Evans Burgess, Jr., as principal beneficiary."
Will 11(b) "I appoint the Whitney National Bank of New Orleans, Louisiana, as trustee, and grant unto said trustee all powers which are conferred upon a corporate trustee by the Louisiana Trust Code, including power to manage, hold and deal with real estate and other property, to sell and lease such real estate or other property, to borrow money and to pledge or hypothecate assets of this trust, if necessary, and make mineral leases on such terms and conditions as said trustee sees fit, and said trustee shall have and is specifically herein given the right to execute any and all contracts or leases, either for the surface rights or for the purpose of exploring, seeking, searching for, developing, producing and removing any oil, gas or other minerals including sulphur, from all or any part or portions of the lands, or with respect to the mineral rights, constituting part of the trust estate on such terms and conditions, and for such considerations as said trustee may deem advisable, including the right to make leases and mineral leases extending beyond the term of this trust when necessary, provided, however, that I specifically instruct the trustee not to sell any stock of St. Charles Air Line Lands, Inc. or Ranger Land Company, or any lands which form part of that trust, except if so instructed in writing by the investment advisors; all cash shall be invested and reinvested.
(c) My son, George Evans Burgess, Jr., shall be the beneficiary of the principal of this trust.
(d) The trustee shall pay the net income of this trust in monthly installments to my husband, George Evans Burgess, usufructuary *1017 of the property of this trust, until his death or remarriage.
(e) Upon the death or remarriage of my said husband, the trustee shall pay the net income of this trust in monthly installments to my son, George Evans Burgess, Jr.
(f) This trust shall terminate at the death of my son, George Evans Burgess, Jr.
(g) The value of my net estate is to be computed as follows for the purpose of determining the legitime of my son, George Evans Burgess, Jr.:
My entire gross estate consists of a one-half interest in and to all the property belonging to the community existing between myself and my husband, George Evans Burgess, at the time of my passing, and my entire separate estate.
All my just debts, funeral expenses and costs, and expenses of the administration of my estate, and all death, succession, transfer, estate and inheritance taxes, Federal and State, shall be deducted from my said gross estate. The balance remaining thereafter shall constitute my net estate.
(h) In the event my trustee shall require the services of an attorney at law, the selection of such attorney shall be made by the investment advisors of this trust.
(i) The purpose and intent of establishing the herein trust, is to give my son, George Evans Burgess, Jr., the legitime to which he is entitled under the laws of the State of Louisiana and in accordance with the provision of the Louisiana Trust Code, and particularly these provisions of the Trust Code authorizing the placing of the legitime in trust, and any provision of this instrument that is incompatible with such provisions of the Louisiana Trust Code, shall be reformed to comply therewith."
Appellant contends that these provisions are illegal because they 1) mandate a method of computing his legitime which is inconsistent with the law; 2) burden his forced portion of decedent's separate property with an income interest in favor of his father; 3) load charges on his legitime in violation of the Trust Code, LSA-R.S. 9:1721, et seq.; and 4) necessarily result in a deprivation of his legitime.
On the first contention, C.C. Art. 1493 provides that decedent's donations inter vivos or mortis causa cannot exceed two-thirds of her property since appellant is her only child. Art. 1502 provides:
Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heir, is not null, but only reducible to that quantum."

Art. 1505, which provides:
"To determine the reduction to which the donations, either inter vivos or mortis causa are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor's decease, in the state in which it was at the period of the donation.
"The sums due by the estate are deducted from this aggregate amount, and the disposable quantum is calculated on the balance, taking into consideration the number of heirs and their qualities of ascendant or descendant, so as to regulate their legitimate portion by the rules above established."
Appellant is correct in that decedent cannot direct the manner in which his legitime is to be computed inconsistent with the law. Her definition of "net estate" in W 11(g) on which appellant's legitime is to be computed is not enforceable as written because it ignores the fictitious addition of donations prescribed by Art. 1505. Furthermore, her directions in W 5(b) that all legacies other than appellant's be delivered tax free could result in an impingement on the legitime.
Apparently the executors agreed with appellant on this point because in their rule against appellant for summary judgment they prayed that these provisions be interpreted to the effect that appellant's legitime in trust be computed according to law.
*1018 Appellant is not satisfied with that relief, contending that he is entitled to have the entire will annulled. As we have already indicated, we do not subscribe to that position.
It was decedent's intention to place the legitime in trust as authorized by § 1841 of the Trust Code. If the amount placed in trust for him under her method of computation is insufficient his remedy of reduction is available to him regardless of the terms of W 5(b) and W 11(g).
Appellant's next contention is against the will's provision which would burden his forced portion of decedent's separate property with the usufruct in favor of his father. As can be seen from the quoted provisions of her will and codicil, decedent placed one-third of all of her property, both separate and community, in trust and designated her husband as the lifetime income beneficiary of the trust.
§ 1844 of the Trust Code equates usufruct and income interest. C.C. Art. 916 confers on a surviving spouse the usufruct over the decedent's share of community property and the testatrix may confirm this usufruct in her will Succession of Waldron, 323 So.2d 434 (La.1975). But the law does not permit separate property making up the legitime to be burdened with the usufruct and to that extent the usufruct is excessive.
Here again, the executors agreed in their rule against appellant to consider the usufruct or income interest in favor of the surviving spouse as limited to the community property, and with this limitation appellant is granted the relief to which he is entitled. This solution is sanctioned by § 2251 of the Trust Code.
Appellant's third complaint stems from the will's provision for appointment of investment advisors for the trustees which will be discussed in detail hereafter. A reference to these advisors is made in W 11(b) quoted above. Appellant contends that these provisions will necessarily violate the Trust Code's § 1841(2) which provides that the forced heir's interest is subject to no charges, but appellant has no present basis for his complaint. If the trustees attempt to charge his interest in violation of the Code he may avail himself of the provision of § 2088.
Appellant's fourth contention with respect to the impingement on his legitime has considerable merit and is one of the two most difficult problems presented by this case. His argument can be summarised as follows: The major portion of decedent's estate consists of thousands of acres of swamp lands. The liquid assets of the estate will be and in large measure have already been used for the payment of taxes said to be $782,000, expenses of administration and legacies. Thus, what is left to be placed in trust is for the most part a one-third interest in decedent's undivided interest in the swamp lands which do not provide any income. Under the terms of W 11(b) these lands may not be sold absent instructions from the investment advisors. The trust is not to terminate until appellant's death so that the legitime conferred on appellant will never have any value during his lifetime.
We must recall at this point that this case is before us on an appeal from a summary judgment. In the affidavit appellant attached to his summary judgment some of the facts discussed above are alluded to, but he has yet to try his case. Since we are not concerned with the dismissal of his motion for summary judgment we will consider his argument with respect to the summary judgment declaring this will valid. In other words, if we assume that appellant can prove what he alleges, does that necessarily require the nullification of the will or at least of the legitime trust?
An answer to the last question requires us first to answer the threshold question posited by appellant. Assuming that what goes into the trust has a theoretical market value which is sufficient to satisfy the legitime but will produce little income for the lifetime of appellant, does this meet the requirements of our law?
Art. 4, § 16 of the Constitution of 1921, provides:

*1019 "The Legislature may authorize the creation of express trusts for any purpose, including but not limited to private trusts, trusts for the benefit of employees, trusts for educational, charitable, or religious purposes, and mixed trusts for any combination of purposes. Substitutions not in trust are and remain prohibited; but trusts may contain substitutions to the extent authorized by the Legislature. No law shall be passed abolishing forced heirship; but the legitime may be placed in trust to the extent authorized by the Legislature. Children lawfully adopted shall become forced heirs to the same extent as if born to the adopter and shall retain their rights as heirs of their blood relatives, but their blood relatives shall have their rights of inheritance from these children terminated." (Emphasis supplied).
In the implementation of this provision the legislature adopted §§ 1841-1847 of the Trust Code. The following sections are pertinent:
§ 1841. General rule
"The legitime or any portion thereof may be placed in trust provided:
(1) The net income accruing to the forced heir therefrom is payable to him not less than once each year; and
(2) The forced heir's interest is subject to no charges or conditions except as provided in R.S. 9:1843 and 9:1844; and
(3) The term of the trust, as it affects the legitime, does not exceed the life of the forced heir; and
(4) The principal shall be delivered to the forced heir or his heirs, legatees, or assignees free of trust, upon the termination of the portion of the trust that affects the legitime."
§ 1845. Legitime satisfied by income interest
"An unconditional income interest in trust, without an interest in principal, payable not less than annually for a term or for the life of a beneficiary satisfies the legitime to the same extent as would a usufruct of the same property for the same term."
§ 1846. Legitime satisfied by principal interest
"An interest in the principal of the trust, without an interest in income, satisfies the legitime to the same extent as would the naked ownership of the same property."
On the surface decedent's will and codicil seem to comply with these provisions of the Code in that they speak of income from the trust which would go to appellant except for the usufruct in favor of his father and the term of the trust does not exceed his lifetime. § 1843 permits restraints on the alienation of the legitime in trust. But if appellant can prove his case and there is no income the terms of the will establishing the trust become meaningless.
From the wording of § 1841 it is clear that the legislature contemplated income from the trust in authorizing the placing of the legitime in trust. If there is sufficient income from the trust this will satisfy the legitime and the forced heir need not be given a principal interest under § 1845. Only § 1846 provides that the legitime may be satisfied without an income interest, but that is only where the usufruct on community property has been conferred on the surviving spouse pursuant to C.C. Art. 916. From this analysis we have concluded that appellant's legitime will not be satisfied if the income generated from the corpus is insufficient. The next question is then, does this mean the trust is invalid?
The last question is answered by § 1842 which provides:
"A provision of a trust instrument that is incompatible with the provisions of this Sub-part shall be reformed to comply herewith."
The intent of the testatrix was to provide appellant with no more than his legitime, place it in trust for the duration of his life, pay the income from the trust property to her surviving spouse until his death and then commence income payments to appellant. If the provision in her will preventing sale of the land or other property *1020 in trust prevents appellant from getting his legitime in the form of an income interest which she intended the trust provision may be reformed in accordance with § 1842, so as to permit a sale of the land and/or other property with corresponding conversion to assets which do produce sufficient income.
That issue is beyond the scope of the summary judgment inquiry before us and can be litigated on the merits. Thus, appellant's rights are reserved to show that the income from the trust property is insufficient to satisfy his legitime as required by § 1845 and to require that the trustees take whatever action is necessary including sale of the property in trust in order to generate sufficient income to satisfy the legitime. The amount of income necessary for this purpose would be the present value of future income appellant can expect based on his present life expectancy with these computations made without regard to the surviving spouse's taking all income from the trust (originating from community property only) until his death or remarriage. In the event that a sufficient amount of income cannot be generated from the trust property in order to satisfy appellant's legitime with an income interest the principal may be invaded by the trustees in order to accomplish this purpose.

THE RESIDUAL TRUSTS
The following provisions of the will and codicil are pertinent at this point:
Codicil 7 "I desire to, and do hereby, amend the first paragraph of the Twelfth Article of my last will and testament dated May 9, 1966, to read as follows: `I give and bequeath to the Whitney National Bank of New Orleans, Louisiana, a Louisiana corporation, and William A. West, as Trustees, to hold in trust as set forth below the remainder of my estate consisting of all the property of which I shall die possessed, and of every kind, character, and description, movable, immovable, and incorporeal, and wherever situated, and not heretofore disposed of in any of the preceding provisions of my last will and testament dated May 9, 1966, or in the herein codicil, for the benefit of my husband, George Evans Burgess, as income beneficiary, hereby recognizing and confirming his usufruct thereon and for the benefit of my grandchildren, as principal beneficiaries."
Will 12 "(a) There shall be established as many trusts as I have grandchildren living at the time of my passing, including grandchildren conceived but not yet borne at that time.
(b) Each trust shall consist of and include an equal share of such remainder of my estate.
(c) I appoint the Whitney National Bank of New Orleans, Louisiana, as trustee, and grant unto said trustee all powers which are conferred upon a corporate trustee by the Louisiana Trust Code, including power to manage, hold and deal with real estate and other property, to sell and lease such real estate or other property, to borrow money and to pledge or hypothecate assets of this trust, if necessary, and make mineral leases on such terms and conditions as said trustee sees fit, and said trustee shall have and is specifically herein given the right to execute any and all contracts or leases, either for the surface rights or for the purpose of exploring, seeking, searching for, developing, producing and removing any oil, gas or other minerals including sulphur, from all or any part or portions of the lands, or with respect to the mineral rights, constituting part of the trust estate on just terms and conditions, and for such considerations as said trustee may deem advisable, including the right to make leases and mineral leases extending beyond the term of this trust when necessary, provided, however, that I specifically instruct the trustee not to sell any stock of St. Charles Air Line Lands, Inc., or Ranger Land Company, or any lands which form part of this trust, except if so instructed in writing by the investment advisors. All cash shall be invested and re-invested."
Codicil 8 "I desire to, and do hereby, amend subparagraph (c) of the Twelfth Article of my last will and testament dated *1021 May 9, 1966, but only to the extent that I appoint the Whitney National Bank of New Orleans, Louisiana, and William A. West as Trustees.
Codicil 13 "Any reference in my last will and testament of May 9, 1966, or in this codicil, to Trustee shall also apply to the plural. In the event William A. West should be unwilling or unable to act as co-trustee, the Whitney National Bani of New Orleans shall become the sole Trustee."
Will 12 "(d) The trustee shall pay the net income of these trusts in monthly installments to my husband, George Evans Burgess, who is the usufructuary of the trust property.
"(e) Upon the death or remarriage of my said husband, the trustee shall pay the net income of each trust to the respective grandchild, however, to such extent only as, in the sole discretion of the trustee, is required to defray the living, educational, medical or any emergency expenses for each grandchild, and the trustee may, if, in its sole judgment it is necessary to do so, use the principal to defray such expenses."
Will 12 "(h) The interests of the beneficiaries under these trusts shall not be subject to the claims of creditors or others, nor to legal process, and may not be voluntarily or involuntarily alienated or encumbered and these trusts shall be considered as spendthrift trusts."
Codicil 10 "I revoke, cancel, annul and set aside the provisions of paragraphs (f) and (g) of the Twelfth Articles of my last will and testament dated May 9, 1966, and instead provide the following:
As to each of my grandchildren, this trust shall be for the following term:
This trust shall continue in full force and effect until the death or remarriage of my husband, George Evans Burgess, and thereafter as to each grandchild, the trustee shall deliver one-half of the corpus and accumulated income to each grandchild on his twenty-sixth birthday and the remainder of the corpus and accumulated income on his thirtieth birthday. If at the time of the death or remarriage of my said husband a grandchild should have arrived at his thirtieth birthday, the Trustee shall deliver to him the entire corpus and accumulated income of his trust.
In the event of the prior death of either grandchild, the trust shall nevertheless continue until either:
(i) The dates on which the trust would otherwise have terminated as to that grandchild had he survived, and shall be terminated in two parts as above provided, except that no part of the trust shall terminate as to any person who is at the time of termination in whole or in part a substituted beneficiary of any part of the trust and who is then under the age of twenty-one, and the trust shall nevertheless continue even beyond its originally scheduled term until the substitute beneficiary shall have arrived at the age of twenty-one; or the maximum term under Louisiana law if that term is shorter than the term specified above.
"If a grandchild should die during the term of this trust (trust created in the Twelfth Article of my last will dated May 9, 1966), intestate and without descendants, the interest of sucy grandchild (principal and accumulated interest) in said trust shall vest in my surviving grandchild or grandchildren or their descendants per stirpes. Said interest shall be governed by all pertinent provisions of my last will and testament dated May 9, 1966, and this codicil."
Codicil 11 "I desire to, and hereby add, the following provision to the Twelfth Article of my last will and testament of May 9, 1966, to-wit: `The trustee shall have the power and is hereby authorized and instructed, in its sole and uncontrolled discretion, to distribute, from time to time, to my husband, George Evans Burgess, in addition to the entire income of this trust, out of the principal or corpus of this trust, any and all amounts as the Trustee thinks appropriate for his support, comfort, contentment, welfare, and peace of mind, or for any other purpose or purposes, with or without consideration of his other resources, and the invasion of the principal or corpus of this *1022 trust for such purposes is hereby specifically authorized to the fullest extent. If at any time George E. Burgess should, due to illness, agen, or any other cause become incapacitated, the Trustee shall have the power and is hereby authorized and instructed, in its sole and uncontrolled discretion, to pay or apply for his benefit such amounts of income or principal or corpus, or both, as the Trustee thinks appropriate for his contentment, support, comfort, welfare and peace of mind, with or without consideration of his other resources."
Appellant's attack on these articles is based on the propositions that 1) these residual trusts are not class trusts, so that the Trust Code is not applicable and the third paragraph of C 10 cannot be considered valid as an attempt to comply with § 1895 of the Trust Code; 2) this paragraph of C 10 contains a prohibited substitution in violation of the constitution and C.C. Art. 1520; and 3) C 11 contains provisions which violate C.C. Art. 1573 and § 2068 (now 2068 A) of the Trust Code.
Beginning with the problem of C 11, this is the only provision which the trial judge specifically held to be invalid and did so on the theory that all parties to the lawsuit agreed that it was invalid. This incorrectly states the position of appellant. He contends that the provision is invalid but he would have us invalidate entire W 12 of which C 11 is an amendment, and thereby make it possible for him to become the residual heir of the estate. § 2068 of the Trust Code provides that the trustee may pay accumulated income or principal to the income beneficiary for support, maintenance, education, medical expenses or welfare under objective standards set forth in the trust instrument. The wording of C 11 is such that it does not provide for objective standards but permits the trustees to convey the principal and pay the income to the surviving spouse with no practical restriction whatever. What was placed in trust for the grandchildren could in effect be taken and delivered to the surviving spouse by the trustees and the trust would be depleted.
Appellant reads into this provision a number of sinister purposes on the part of the testatrix. He contends that it deprives him of something to which he is entitled and permits his father to manipulate the trust estate left to his grandchildren in such a way as to make those grandchildren bend to his will. Appellant sees this as a demonstration of immoral intent on his mother's part when the codicil was drafted, but we see it from a different point of view. The residue of the estate could have been left entirely to appellant's father with no trust benefits conferred upon the grandchildren whatsoever. The fact that the residual trusts were created belies appellant's contention that his mother was trying to accomplish a situation where her husband could manipulate and dictate to these grandchildren. As we see this provision, it was her intention to give something to the grandchildren but subject to a great degree of control on the part of her husband. We see nothing sinister, illegal or immoral about this intent. We believe, however, that the provision contains a violation of the Trust Code, in that it permits an unrestricted invasion of the principal and for that reason should be modified. The modification of this provision without nullifying the entire paragraph or trusts would be consistent with § 2251 of the Trust Code and W 18 which is a standard severability clause. The trial judge went further and invalidated the entire paragraph and the executors did not appeal. But appellant's appeal brings the issue before us, and we have concluded that the result which most accurately embodies the intent of the testatrix within the framework of the Code is a deletion of the provisions from C 11 authorizing the trustees to invade the principal of each residual trust.
We now turn to appellant's arguments with respect to the invalidity of the third paragraph of C 10. This paragraph is the focal point for what we consider the other of the two most troublesome issues raised by appellant. We repeat our quotation of the paragraph at this point:

*1023 "If a grandchild should die during the term of this trust (trust created in the Twelfth Article of my last will dated May 9, 1966), intestate and without descendents, the interest of such grandchild (principal and accumulated interest) in said trust shall vest in my surviving grandchild or grandchildren or their descendants per stirpes. Said interest shall be governed by all pertinent provisions of my last will and testament dated May 9, 1966, and this codicil."
If the residual trusts qualify as class trusts under §§ 1891 et seq. as the executors contend the third paragraph of C 10 would appear to be consistent with § 1895 which provides:
"An interest of a child or grandchild who dies during the term of the trust vests in his heirs or legatees, but the trust instrument may provide that the interest of a child or grandchild who dies intestate and without descendants during the term of the trust vests in the other members of the class."
But § 1891 provides for the establishment of class trusts as follows:
"Notwithstanding the provisions of R.S. 9:1803, R.S. 9:1831 through 9:1835, and R.S. 9:1841 through 9:1847, but subject to the restrictions stated in this Sub-part, a person may create an inter vivos or testamentary trust in favor of a class consisting of some or all of his children or grandchildren or both, although some members of the class are not yet in being at the time of the creation of the trust, provided at least one member of the class is then in being. Such a trust is called a class trust."
Thus, in a class trust the beneficiaries include members of the class who are not yet in being when the trust is created, i. e., on the date of the settlor's death, § 1821. But the residual trusts are for the benefit exclusively of "grandchildren living at the time of my passing, including grandchildren conceived but not yet born at that time." With these terms the decedent provided beneficiaries "in being and ascertainable on the date of the creation of the trust" pursuant to § 1803.
In the comments on § 1891 by the Louisiana State Law Institute found in the Revised Statutes is the following statement:
"The factor that differentiates a class gift from a gift to individuals singly in the intention of the transferor that there be the possibility of fluctuation in the number of ultimate takers."
When decedent limited the class of beneficiaries to grandchildren in being at the time of her death she negated the possibility of such fluctuation. We have, therefore, concluded that the residual trusts are not class trusts and as such § 1895 has no application to the problem.
Thus, we are faced headon with the question of whether or not the last paragraph of C 10 contains a substitution in violation of C.C. Art. 1520 which provides:
"Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
"Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee."
§ 1723 of the Trust Code provides:
"A disposition authorized by this Code may be made in trust although it would contain a prohibited substitution if it were made free of trust."
§ 1737 provides:
"A settlor may dispose of property in trust to the same extent that he may dispose of that property free of trust and to any other extent authorized by this Code. A trust containing a substitution authorized by the Code is valid."
At the time of decedent's death there were no provisions in the Trust Code which specifically authorized the type of disposition with which we are concerned. There were provisions for substitutions in class trusts which we have already discussed and § 1807 provided for successive beneficiaries of income as distinguished from principal. *1024 §§ 2067 and 2068 permitted invasion of principal under certain circumstances, but § 1972 provided that:
"Upon a principal beneficiary's death, his interest vests in his heir or legatees, subject to the trust, except as to class trusts."
In the paragraph of the codicil under consideration, upon the death of a grandson the settlor would prevent his interest from vesting in his heirs unless he has descendants, subject, however, to his right to dispose of his interest by will. An analysis of this paragraph makes it obvious that her intent was to preclude appellant from inheriting his sons' interests under the laws of intestacy.
It appears to us that the wording of the paragraph under consideration would produce a different result than is mandated by former § 1972 unless the words "subject to the trust" save the disposition. But this presupposes that the provisions of the trust, i. e., designations of successive income beneficiaries if the grandsons die intestate and without descendants, are valid.
We note parenthetically that § 1972 was amended by Act 160 of 1974 to authorize the very provisions here in question, but we find no such provision in the Trust Code at the time of decedent's death. So there is considerable merit to appellant's argument that the residual trusts contain prohibited substitutions with a similar result to that reached in Crichton v. Succession of Gredler, 256 La. 156, 235 So.2d 411 (1970).
In Crichton the testator left the residue of his estate to a trustee for the benefit of his two nephews. The intention was then expressed that upon termination of each trust, if the named beneficiary was not living the trust property was to be delivered to the child or children of the deceased beneficiary, and, in the absence of living child (children) to successively named alternate beneficiaries. Holding that this was a prohibited substitution the court declared the entire will null. At the outset, it should be understood that the validity of the entire will in the instant case is not at stake even if the subject paragraph contains a prohibited substitution. Succession of Walters, 261 La. 59, 259 So.2d 12 (1972), but the validity of the residual trusts alone is to be considered.
In the Crichton case the court relied on Succession of Simms, 250 La. 177, 195 So.2d 114 (1967) in stating:
"It is obvious, therefore, that a prohibited substitution exists when a testator places the title of the property bequeathed in a first named legatee (referred to as the instituted heir) at his death, and directs that, at the end of a specified period, usually but not necessarily at the death of the instituted legatee, this title is to be turned over, transmitted, or passed to a second legatee (referred to as the substitute heir), with the result that both parties take their title directly from the testator, the title of the institute being one that he cannot alienate because of the charge that he is to transmit it to the substitute at some time in the future and the title of the substitute being one that the substitute cannot alienate because it does not exist until some date in the future when the property is to eventually `vest' in him."
Quoting from Succession of Reilly, 136 La. 347, 67 So. 27 (1915) the court made this distinction between the prohibited substitution and the fidei commissum:
"The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. In the fidei commissum, whereby the donee or legatee is invested with the title and charged or directed to convey it to another person or to make a particular disposition of it, only the charge or direction, as to the ultimate disposition of the donation or legacy, is null and is to be considered not written, leaving the donation or bequest valid as to the donee or legatee. A substitute is an attempt on the part of the donor or testator to make *1025 a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee."
In Succession of Stewart, 301 So.2d 872 (La.1974), the court reviewed all of this jurisprudence in deciding that a disposition in trust was not a prohibited substitution and concluded:
". . . There is no obligation to preserve the trust property for a second beneficiary or to keep the title inalienable. "Likewise, we conclude that the testament does not include a fidei commissum since no charge is made upon the legatees (income and principal beneficiaries) to make a particular disposition of their respective interests. It is true that the testator directs certain charges to the trustees; however, they are not nor ever will be legatees under the will."
As we approach a resolution of the problem presented in the instant case we are guided by principles we set forth in Succession of Dinwiddie, 263 So.2d 739 (La. App.4th Cir. 1972) to the effect that, 1) Louisiana courts construe wills in a sense which gives them effect rather than renders them invalid, and they prefer an interpretation of which will save the decedent from intestacy, citing Succession of Kamlade, 232 La. 275, 94 So.2d 257 (1957), Succession of Mulqueeny, 248 La. 659, 181 So.2d 384 (1966) and C.C. Art. 1713; and 2) the following from Succession of Feitel, 176 La. 543, 146 So. 145 (1933):
". . . Our predecessors held long ago that `Substitution and fidei commissum are never presumed; they must be expressed, or clearly result from the sense and signification of the words used in the instrument, which contains them.' (Arnaud v. Tarbe, 4 La. 502), and `unless the will necessarily presents a substitution, and can be understood in no other manner, the disposition will be sustained' (Succession of Ducloslange, 4 Rob. 409), and `in case of doubt whether a will presents a substitution or not, it should be maintained' (Cole's Heirs v. Cole's Ex'rs, 7 Mart. (N.S.) 414) . . ."
Under the provisions of the disputed paragraph in our case, unlike the Cricbton case, the grandsons are free to leave the property in trust by testament. They are not directed to turn the title over to anyone named by the testatrix. In fact, they can bequeath the trust property to appellant. In the event that they write a will their legatees will not take title directly from our testatrix at all. There is no substituted heir at the will of the testatrix because she has expressly bowed to the wills of her grandsons. The acknowledgment that they may bequeath the property to anyone can hardly be construed as obligation on them to preserve the trust property for a second beneficiary or to keep the title inalienable. Therefore, we have concluded that the third paragraph of C 10 does not contain a prohibited substitution and appellant's argument that the residual trusts are invalid for that stated reason falls.
The Crichton case was criticized by Professor Leonard Openheim in his Louisiana Civil Law Treatise, Vol. 10, § 123 at p. 239 et seq. in that a different result would have been reached if § 1724 of the Trust Code had been applied along with § 2251, as was advocated by Chief Justice Sanders in his dissenting opinion. Considering these authorities and in view of the distinction, we have already noted in the provisions of the will now under consideration which preserve the right of the testatrix' grandsons to dispose freely of their interest by testament, we have concluded that these trusts, unlike Crichton's, are not to be invalidated because of the inclusion of provision which would apply only in the event that a grandson dies intestate and without descendants.

THE VALIDITY OF THE INVESTMENT ADVISOR PROVISIONS
Appellant is quite correct that some of the powers conferred on the investment advisors are excessive. The following provisions of the will and codicil are in question:
W 15: "The following provisions shall apply to and govern all trusts created in this will:

*1026 (a) J. Edgar Monroe and George Evans Burgess and their respective successors, are named investment advisors of this trust to assist the trustee in all matters pertaining to the administration of this trust. Trustee shall, prior to taking any action with respect to the corpus of the trust estate or any part thereof, request from the advisors written instructions, and shall act in accordance with such written instructions.
"When given written instructions by investment advisors or either of them, trustee is empowered to hold, manage, and administer the trust estate in the interest of the beneficiary owners thereof and to enter into any contract and execute any instruments for and on behalf of the trust, enjoy the fullest measure of authority conferred upon or recognized in trustees by applicable Louisiana law. It is the express intention to confer upon the investment advisors, or either of them, the power in their, or either of their discretion to give mandatory instructions to the trustee upon every question or power of management concerning the trust estate, which might be conferred by an express enumeration of separate powers.
"In the event of conflicting instructions from investment advisors, or their successors, the trustee may act in accordance with either set of instructions as to it, in its absolute discretion, seems proper, without incurring any liability whatsoever in so doing."
Codicil 12: "I revoke, cancel, void, and eliminate the last paragraph (a) of the Fifteenth Article of my last will and testament dated May 9, 1966, and instead provide as follows: In the event of the death, or of the inability or unwillingness of J. Edgar Monroe or George Evans Burgess to act as investment advisors, the remaining investment advisor shall continue to act as sole investment advisor. In the event of the death or of the inability or unwillingness of both J. Edgar Monroe and George Evans Burgess to act as investment advisors, the corporate trustee is authorized and directed to employ a qualified investment advisor."
Will 15: "(g) The investment advisors and their successors shall serve without compensation, and shall, at no time, be held liable for any action taken or not taken, or for any loss or depreciation in the value of the trust property, whether due to error of judgment or otherwise, and shall have no liability whatsoever unto the settlor, and any beneficiary or the trustee."
Other functions of the investment advisors are mentioned in W 11(b) and W 11(h) concerning the property left to appellant in trust and W 12(c) concerning the residual trusts.
§ 2090 requires that a trustee exercise such skill and care as a man of ordinary prudence would exercise in dealing with his own property, and § 2087 prohibits the trustee from delegating to others the doing of acts that he can reasonably be required personally to perform. The comment to that section provides that he may delegate powers which are purely ministerial. § 2127 provides that in acquiring, investing, reinvesting, exchanging, retaining, selling and managing trust property, the trustee shall exercise as much skill and care as a man of ordinary prudence, discretion and intelligence would exercise in the management of his own affairs.
These exercises provide an ample basis for the employment of investment advisors to assist the trustees in the administration of the trust, but the provisions of the decedent's will provide them with excessive powers which by law must be retained by the trustees. The executors recognized this in their motion for summary judgment when they agreed that W 15(a) and (g) as well as C 12 would be declared null and void. They also proposed a substitution of these sections with a portion of the last sentence of C 12 to the effect that the corporate trustee is authorized and directed to employ qualified investment advisors. We see no objection to this amendment and deem it appropriate under the law. The executors also agreed to delete *1027 from W 11(b) the clause which contains a reference to the investment advisors which deletion is consistent with the above. Likewise, we would consider deleted the same references from W 11(h) and W 12(c) since they attempt to confer on investment advisors powers which by law are conferred on the trustee.
Once again, appellant urges that this deletion of the investment advisor provisions has the effect of subverting the testator's intent so that the trusts should be wholly invalidated. He contends that her intent is demonstrated not only by her naming her spouse investment advisor but also in the context of the will as a whole which confers so many benefits and so much power on him. We have concluded that our action does not subvert her intent but simply confines the provisions of her will within the limitations of the law, at all times preserving her overriding intention to give everything possible under the law to her surviving spouse.
Having disposed of appellant's principal contentions, we now turn to some miscellaneous contentions he has made. One is that the last clause of W 11(b) which prohibits the sale of stock and land forming part of the trust, is in violation of § 2119 of the Trust Code. We note that the same provision limiting the sale of this stock and land was included in W 12(c) as to the residual trust. Appellant is correct in that the Trust Code does not permit a prohibition against sale of trust property indefinitely. Recognizing this to be the law the executors agreed in their motion for summary judgment to delete those objectionable provisions in W 11(b) although they did not make such an admission with respect to W 12(c). In any event, § 2119 of the Trust Code provides that the trust instrument cannot forbid the sale of immovable property for a period beyond 15 years from the settlor's death, so that these provisions must be amended for them to be consistent with the law. Appellant makes a similar attack on W 15(h), which provides: "I specifically direct and instruct the trustee to hold all property devised to the trusts herein created, which is not divisible in kind, in indivision." This provision is also consistent with § 2119 of the Code in that the maximum period for which the settlor can prevent alienation of immovable property is 15 years. To that extent the provision is considered amended.
We are cognizant of the executors' agreement in their motion for summary judgment that the entire clause in W 11(b) containing the restriction against sale of property belonging to the legitime trust be declared null and void but the clause should remain at least in the form which is closest to the intention of the testatrix. We have therefore concluded that the non-alienation clause be amended to limit the restriction to movables only and 15 years for immovables.
The entire foregoing discussion relative to the non-alienation clause must be read in the context of this entire opinion, it being understood that, 1) reference to the investment advisors in W 11(b) has been deleted, and 2) all property in the legitime trust may be sold if the court finds this necessary in order to satisfy appellant's legitime with a sufficient income interest or principal.
In their motion for summary judgment executors properly agreed to modify W 15(d) which contains a blanket release in favor of the trustees from any liability so that their liability would be limited to the extent authorized by § 2206. This modification will be made since the provision as written is clearly inconsistent with the law.
Appellant also contends that the appointment of the named trustees for all of the trusts necessarily produces a conflict of interests and a built in violation of §§ 2081 and 2082 of the Trust Code. These provisions of the Code must be read in conjunction with § 2061 which provides the general rule that the nature and extent of the duties and powers of a trustee are determined from the provisions of the trust instrument. Applicant's argument necessarily presupposes that the provisions of the will which we have discussed are illegal and that the implementation of those provisions by the trustee would violate their duties to him, but we have concluded that the will *1028 and the trusts are valid, except to the extent that they have been modified. We cannot accept appellant's contention that these trustees are going to violate the law and until and unless they do there is no basis for interfering with them or removing them from office.
We have concluded that the changes which have been discussed in this opinion, along with the deletions of certain sections of the will are authorized by §§ 2065 and 2251 of the Trust Code. Furthermore, nothing which we have said should be construed as a limitation on appellant's right to bring appropriate proceedings in the event that the executors or trustees violate the law. For instance, in a proper accounting appellant may protect himself from a violation of § 1841(2) which prohibits his interest from being subjected to charges except within the framework of the relationship between the usufructuary and naked owner, which is precisely the relationship between the surviving spouse and the appellant under the terms of the legitime trust.
Accordingly, the judgment appealed from is affirmed but is amended to the extent that the will and codicil of decedent are declared valid except with respect to the following:
1. The provisions which provide for the method of computing appellant's legitime are considered to be ineffectual to the extent that they are in conflict with the law. These include W 5(b) as amended by C 11(g) and W 11(g) and (i).
2. No part of decedent's separate property included in the legitime is to be burdened with a usufruct or income interest in favor of George W. Burgess, Sr.
3. The restructions on the sale of lands in W 11(b) and W 12(c) are modified to the extent that the period of time in which sale is prohibited is fifteen years from date of decedent's death. The same modification is made to W 15(h) regarding partition of land.
4. W 15(d) is amended to conform it to the limitation of liability provisions of § 2206 of the Trust Code.
5. W 15(a) and (h) and C 12 covering investment advisors are deleted from the will as null and void along with those references to investment advisors in W 11(b) and (h) and W 12(c). However, nothing herein is to be construed as a prohibition to the trustees from employing qualified investment advisors.
6. C 11 is declared null and void to the extent that it permits invasion of the principal of each trust.
It is further ordered that this case be remanded to the trial court to permit appellant to avail himself of all provisions of the law to obtain reduction of excess donations, inter vivos and mortis causa along with the proper disposition of decedent's property in order to insure that appellant will have a sufficient income interest or principal to satisfy his legitime with recognition of the income interest on community property in trust only in favor of George W. Burgess, Sr. for his lifetime or until he remarries and to bring whatever actions as may be necessary and appropriate to insure that the executors and trustees comply with all pertinent laws.
AMENDED AND AFFIRMED, REMANDED.
NOTES
[1] Reference to articles of the Will in this opinion will be shown as W 1, and to the Codicil as C 1, for example.
[2] "All provisions of the Louisiana Trust Code shall apply in all instances not specifically provided for herein, and, if any provision herein contained should be in violation of said Louisiana Trust Code, such provision shall be considered as not having been written, but shall not vitiate this will or any trust herein created or any of the other provisions of such trust."