SUMMERS, Justice.
Plaintiffs Gloria Crichton McGehee and Powell Crichton, Jr., are a niece and nephew, respectively, of Kate Crichton Gredler the decedent. They petitioned for the annulment of the last will and testament of *159 the decedent, contending primarily that the will contained a substitution prohibited by the Constitution and Civil Code of Louisiana.
The trial court refused to annul the will. On appeal the Second Circuit reversed. La.App., 220 So.2d 714. Writs were granted on the application of the proponents of the will. 254 La. 129, 222 So.2d 882.
The contested will is in olographic form and is dated March 6, 1963. After provisions revoking all prior wills, appointing Thomas Crichton, Jr., her brother, as executor and directing the payment of her debts, the will provides:
* * * and I do hereby give and bequeath to the said Thomas Crichton jr. as trustee for the benefit of his two sons, my nephews, Thomas Crichton Third, and John H. Crichton, all the rest, residue and remainder of my property, both real and personal, except my residence with contents therein, located at Creton Lake Road in the town of Bedford, County of Westchester, State of New York, and except also all moneys now to the credit of my account in the First National City Bank of New York (Mt. Kisco branch) ; shall' thereafter be held in an undivided one-half interest in each of the aforementioned two trusts, each trust created and named for its above named beneficiary, and both trusts shall be Louisiana trusts, administered in the State of Louisiana, in accordance with the laws of Louisiana — I appoint Thomas Crichton, jr., my brother, Trustee of each of above named trusts. In the event that Thomas Crichton, jr. should die, become incapacitated or refuse to act, prior to the termination of these trusts, then the First National Bank of Shreveport, Louisiana, shall become Trustee. The trustee, Thomas Crichton, jr., shall have full power to sell, mortgage, or lease all property, and otherwise manage all trust property with the same control and freedom as though trustee owned said property personally.
In the event that either beneficiary, Thomas Crichton third or John Hayes Crichton be not living when this trust is terminated, both income and corpus of such said trust shall be paid over or conveyed by Trustee to the child or children of said deceased beneficiary in equal, undivided portions. In event that neither a beneficiary nor his child or children are living upon the termination of this trust, then said income and corpus shall be paid over or conveyed by the Trustee to the other trust beneficiary or, if he be not living, then to his child or children in equal or undivided portions. In the event that neither beneficiary, no (sic) any of their children be living upon termination of these trusts, as above herein set forth, then the income *161 and corpus of these trusts shall be paid over or conveyed to the children of my deceased brother, Powell Crichton; namely, Powell Crichton, jr., Kate Crichton, Edward B. Crichton and Gloria Crichton McGehee in equal or undivided portions.
The Trust Estates Law of 1938, as amended, Section 16 of Article IV of the Constitution, as amended in 1962 to provide that a trust may contain substitutions to the extent authorized by the Legislature, and Article 1520 of the Civil Code, as amended in 1962 to make substitutions in trust an exception to the prohibitions of that article, were all in effect when Mrs. Gredler drew her will on March 6, 1963. Thereafter the Trust Estates Law of 1938 was superseded by the Louisiana Trust Code (La.R.S. 9:1721-2252) enacted in 1964.
At the time of Mrs. Gredler’s death in 1965, therefore, the law applicable to trusts was contained in Section 16 of Article IV of the Constitution as amended in 1962, Article 1520 of the Civil Code as amended in 1962 and the Louisiana Trust Code of 1964. All parties concede that the Trust Code applies to the trusts in this case.
The suit to annul Mrs. Gredler’s will was instituted in 1967. Aside from the primary contention that the will was a nullity because it contained a prohibited substitution, the attack also asserts that the will is defective because it suspends until a future indeterminate time the ultimate vesting of the decedent’s estate in her legatees, and because it dictates that persons succeed to the estate who were neither ascertainable nor necessarily in being at the decedent’s death.
Proponents of the will defend its validity on the ground that the condition under which the trust property devolves upon the successor legatees is impossible of fulfillment and should be considered as not written; if the language of the trust provision dictating the transfer of principal after the termination of the trusts creates a prohibited substitution, Sections 2026 and 2027 of the Trust Code permit the deletion of these transfer provisions without defeating the purposes of the trusts, and the broad powers granted to the trustee constituted the contested disposition nothing more than a fidei commissum.
Does the will contain a substitution? The answer is yes.
Prohibited substitutions are defined by the law. Prior to its amendment in 1962, Article 1520 of the Civil Code read:
Substitutions and fidei commissa are and remain prohibited.
Every disposition by which the donee, the heir, or legatee is charged to preserve for or to return a thing to a third persons is null, even with regard to *163 the donee, the instituted heir or the legatee.
In consequence of this article the trebellianic portion of the civil law, that is to say, the portion of the property of the testator, which the instituted heir had a right to detain, when he was charged with a fidei commissa or fiduciary bequest is no longer a part of our law.
This codal provision had, in substance, been a part of Louisiana’s Civil Code since 1808.
The law forbidding substitutions was considered to be of such importance that the Constitution adopted in 1921 incorproated the prohibition in Section 16 of Article IV. The provision was amended several times, (see Act 318 of 1944, Act 208 of 1952, and Act 548 of 1958) so that, prior to the 1962 amendment, it read as follows:
No law shall be passed abolishing forced heirship; provided, that children lawfully adopted shall become forced heirs to the same extent as if born to the adopter and shall retain their rights as heirs of their blood relatives, but their blood relatives shall have their rights of inheritance from these children terminated. No law shall be passed authorizing the creation of substitutions, fidei commissas (sic) or trust estates; except that the legislature may authorize the creation of trust estates for a period not exceeding ten years from the settlor’s death as to a beneficiary which is not a natural person; ten years from the settlor’s death as to a beneficiary who is a natural person or until the death of the beneficiary whichever is the longer period; and provided further that this prohibition as to trust estates or fidei commissas (sic) shall not apply to donations strictly for educational, charitable, religious purposes or trusts created by employers for the benefit of their employees.
In construing Article 1520, our cases have formulated a distinction between the substitution and the fidei commissum and clarified the definitions -applicable to each. Most often quoted to illustrate this development is the case of Succession of Reilly, 136 La. 347, 67 So. 27 (1915), in which the will under attack contained the following language:
And the balance of whatever I may die possessed of I give and bequeath unto Bishop Thomas Heslin, to be distributed as he sees fit among my people in Ireland and for the further education of Thomas Regan, hereby instituting Bishop Heslin my sole heir and universal legatee.
As organ of the court, Chief Justice O’Niell declared that the bequest amounted to a fidei commissum. in which the directions to Bishop Heslin were merely *165 precatory and would be considered not written. This is what he wrote:
In more than a century of jurisprudence on the subject of substitutions and fidei commissa, prohibited by Article 1520 of the Civil Code, the distinction between them and the difference in their effect has been consistently observed. The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. In the fidei commissum, whereby the donee or legatee is invested with the title and charged or directed to convey it to another person or to make a particular disposition of it, only the charge or direction, as to the ultimate disposition of the donation or legacy, is null and is to be considered not written, leaving the donation or bequest valid as to the donee or legatee. A substitution is an attempt on the part of the donor or testator to make a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee.
In Succession of Heft, 163 La. 467, 112 So. 301 (1927), a prohibited substitution was defined as “A bequest of property to one legatee with the stipulation and on the condition that at his death and without an act of conveyance from him it shall belong to another legatee named in the will * * Other cases not involving trusts are to the same effect. See Succession of Ryan, 228 La. 447, 82 So.2d 759 (1955); Girven v. Miller, 219 La. 252, 52 So.2d 843 (1951); Maddox v. Butchee, 203 La. 299, 14 So.2d 4 (1943); Succession of McCan, 48 La.Ann. 145, 19 So. 220 (1896); Anderson v. Pike, 29 La. Ann. 120 (1877); Provost’s Heirs v. Provost, 13 La.Ann. 574 (1858); Farrar v. McCutcheon, 4 Mart. (N.S.) 45 (La.1825) ; Cloutier v. Lecomte, 3 Mart. (O.S.) 481 (La. 1814).
Cases involving trusts created after the Trust Estates Law of 1938 but prior to the Trust Code of 1964 have also recognized that wills which attempt to create prohibited substitutions must be nullified. Succession of Simms, 250 La. 177, 195. So.2d 114 (1967); Succession of Guillory, 232 La. 213, 94 So.2d 38 (1957); Succession of Meadors, 135 So.2d 679 (La.App.1961).
In Succession of Simms the principles involved in prohibited, substitutions were reviewed and restated:
It is obvious, therefore, that a prohibited substitution exists when a testator places the title of the property bequeathed in a first named legatee (re *167 ferred to as the instituted heir) at his death, and directs that, at the end of a specified period, usually hut not necessarily at the death of the instituted legatee, this title is to be turned over, transmitted, or passed to a second legatee (referred to as the substitute heir), with the result that both parties take their title directly from the testator, the title of the institute being one that he cannot alienate because of the charge that he is to transmit it to the substitute at some time in the future and the title of the substitute being one that the substitute cannot alienate because it does not exist until some date in the future when the property is to eventually “vest” in him. Marshall v. Pearce, 34 La.Ann. 557. In thus indicating a desire to give the property away “twice” to two named legatees, the testator, as pointed out in Succession of Reilly, supra, not only makes his own will, but attempts also to make the will of the instituted legatee, thus endeavoring to determine the law of successions by substituting “his own will * * * for the legal order of succession from his donee or legatee.”
It is to check the power of a testator to thus control the descent and distribution of his property after title has vested in the first legatee upon his death, in contravention of the laws establishing the order of inheritance, as well as to present restraints upon the alienation of property, that the law, as a penalty, strikes down the entire disposition, the second paragraph of Article 1520 clearly providing that “Every disposition by which the donee, the heir, or the legatee is charged to preserve for or return a thing to a third person is null even with regard to the donee, the instituted heir, or the legatee.” As pointed out in Succession of Johnson, 223 La. 1058, 67 So.2d 591, “in cases of prohibited substitutions the whole will is stricken with nullity whereas in cases of fidei commissa, it is only those dispositions which are tainted with that designation that are invalid,” the vital distinction being whether the instituted legatee has under the bequest the authority to alienate the title placed in him * * *.
Our first problem is to examine the contested Gredler will in the light of these definitions of prohibited substitutions and determine whether such a substitution is present. Section 1821 of the Trust Code stipulates that “A testamentary trust is created at the moment of the settlor’s death * * The interest in the bequest of the universal legatees or principal beneficiaries of the trust also vests at the moment of the testatrix’s or settlor’s death.
As the will provides no term for the trusts, each of them will terminate upon the death of its respective beneficiary in *169 accordance with Section 1833(1) of the Trust Code, providing that “If the trust instrument stipulates no term, the trust shall terminate: (1) Upon the death of the last income beneficiary who is a natural person * * La. Trust Code § 1833(1). And at the death of the beneficiaries the principal devolves upon their heirs. La. Civil Code art. 940; La. Trust Code § 1972.
Thus, the two principal beneficiaries cannot be living at the time the trusts terminate, since their respective deaths, by operation of law, will be the terminating events. Nevertheless the testatrix named Thomas Crichton III and John H. Crichton as beneficiaries of the trusts created by her will, and she provided that at their death the trust properties should be paid over and conveyed to their respective children. Therefore, inasmuch as a substitution consists of successive principal interests, and of the making of a will for the first named legatee by the decedent, the present will provides for the successive interests to vest after the termination of the trust. The substitution is therefore not “in trust” as the Trust Code could permit. It is, instead, out of trust. Moreover, in so providing the testatrix makes the will of the first legatees. In so doing she creates a substitution prohibited by law.
What, then, is the effect of the 1962 amendment to Section 16 of Article IV of the Constitution, the 1962 amendment to Article 1520 of the Civil Code and the Louisiana Trust Code on the substitution determined to exist in this will under prior law?
The 1962 amendment to Section 16 of Article IV of the Constitution abolished many of the restraints theretofore imposed upon trusts, but it retained the traditional prohibition against substitutions except as they might be authorized by the Legislature. Insofar as it is pertinent here, the amendment provides: “Substitutions not in trust are and remain prohibited; but trusts may contain substitutions to the extent authorized by the Legislature.”
In like manner, the amendment to Article 1520 of the Civil Code retained the prohibition against substitutions except insofar as substitutions might be permitted in the laws relating to trust. As Amended in 1962 the Article now reads:
Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.
The amendments of 1962, therefore, do nothing to legitimate substitutions, except *171 insofar as they authorize the Legislature to permit substitutions in trust, that is, the Trust Code of 1964 or other legislative acts must implement the authorizations contained in the amended Constitution and Civil Code.
Despite Section 1723 declaring that “A disposition authorized by this Code may be made in trust although it would contain a prohibited substitution if it were made free of trust.”, study of the Trust Code discloses no provision permitting a substitution in trust.[1] To the contrary, Sections 1971 and 1972 of the Trust Code embody prohibitions which effectively prevent the creation of substitutions in trust:
§ 1971. The interest of a principal beneficiary is acquired immediately upon the creation of a trust, subject to the exceptions provided in this Code.
§ 1972. Upon a principal beneficiary’s death, his interest vests in his heirs or legatees, subject to the trust, except as to class trusts.
Class trusts mentioned as an exception in Section 1972, which contemplate shifting of principal, are not involved here, for they apply exclusively to children or grandchildren of the settlor. See La. Trust Code § 1891 et seq.
By the terms of Section 1971 the interest of .a principal beneficiary “is acquired immediately upon the creation of a trust.” The implications of the language of Section 1971 is explained in Comment (c) to that section: “Although under this Code interests that are the approximate equivalent of the Anglo-American shifting interest are permitted in income, such interests are not permitted in principal except as to class trusts and invasion of principal.”
When the trust is created in the ordinary situation, therefore, the interest of a principal beneficiary must be acquired immediately upon the creation of that trust. (La. Trust Code § 1971). The provisions of the will of Mrs. Gredler violated this rule. By providing that upon termination of each trust, if the named beneficiary thereof is not living, the trust property is to be delivered to the child or children of the deceased beneficiary, and in the absence of a living child or children to successively named alternate beneficiaries, Section 1972 is also violated. At the same time the will created a prohibited substitution and as a, consequence the entire will is null. La. Civil Code art. 1520; Succession of Simms, 250 La. 177, 195 So.2d 114 (1967); Succession of Johnson, 223 La. 1058, 67 So.2d 591 (1953).
It has been suggested in brief by amicus curiae that the decision in this case should rest upon Sections 1971 and 1972 alone, reference to substitutions being itnneces *173 sary. In addition to the fact that the primary issue posed by plaintiff’s pleadings and briefs is whether the will contains .a substitution, the suggestion overlooks the very significant and all important difference which results from a finding that a prohibited substitution is contained in the will and a finding that Sections 1971 and 1972 are violated by certain provisions of the will. In the case of the prohibited substitution the entire will is rendered null, whereas if we should confine our decision to a holding that Sections 1971 and 1972 were violated, the invalid provisions of the will could be excised without declaring the entire will null. La. Trust Code § 2251.
Our finding that a substitution exists in Mrs. Gredler’s will amounts to a rejection of all other contentions or makes an answer to those contentions unnecessary.
For the reasons assigned, the judgment of the Court of Appeal is affirmed.

. Lemann, How Practitioners Can Use the New Trust Code, 13 La.Bar J. 131 (1965).