364 So.2d 226 (1978)
Succession of Della Gordon GWATHMEY and Gordon D. Baten.
Ruby Mae Baten TAYLOR, sister and sole heir in intestacy of the Deceased, Plaintiff and Appellant,
v.
Floy Taylor BATEN, widow of decedent, Gordon D. Baten, Defendant and Appellee.
No. 6616.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1978.
Rehearing Denied November 28, 1978.
Writ Granted January 19, 1979.
*227 Raymond A. Beyt, Lafayette, for plaintiff-appellant.
Thomas J. Sibley, Beaumont, Tex., for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and CUTRER, JJ.
DOMENGEAUX, Judge.
Decedent, Gordon D. Baten, died testate at his domicile in Beaumont, Jefferson County, Texas, on February 2, 1974, leaving separate immovable property situated in Louisiana. He was survived by his widow, Floy Taylor Baten, and his sister, Ruby Mae Baten Taylor. There were no ascendants or descendants.
The testament, valid in form under the laws of the State of Texas, contained the following dispositive provision:

"2.
I give, devise and bequeath all of my property, real, personal or mixed, wheresoever located to my beloved wife, Floy Baten, should she be living at my death.

3.
In the event my said wife shall have predeceased me, or should my said wife *228 and I die under circumstances that there is not sufficient evidence to determine the order of our deaths or if she shall die within a period of thirty (30) days after the date of my death, then all bequests, devises and provisions made herein to or for her benefit shall be void; and my estate shall be administered and distributed in all respects as though my said wife Floy Baten had predeceased me.

4.
In the event of any of the happenings set forth in paragraph numbered 3 of this my will, I then give, devise and bequeath all of my property, real, personal or mixed, as follows:
(a) An undivided one-fourth (¼) thereof to Virgil Taylor, Box 3283, Radford, Virginia;
(b) An undivided one-fourth (¼) thereof to Jon Taylor, who is the son of Virgil Taylor, and who teaches at the University of Jacksonville, Florida;
(c) An undivided one-fourth (¼) to Dan Taylor, Radford, Virginia;
(d) An undivided one-fourth (¼) to Bill Taylor, who resides in the State of Oregon."
Probate proceedings were commenced in Texas, in which the will was approved and given effect. Ancilliary proceedings were commenced in the Fifteenth Judicial District Court of Louisiana, in and for Lafayette Parish, there being immovable property situated there. The Louisiana proceedings actually involved two successions: that of decedent's and that of his aunt, Della Gordon Gwathmey, who died testate in Texas approximately one year before him. Mr. Baten was bequeathed immovable property in the aunt's will, some of which was located in Lafayette Parish. However, since the aunt's will was not probated in Louisiana until after the death of Mr. Baten, the two successions were handled together. On January 19, 1977, a judgment of possession was rendered in Louisiana, recognizing decedent as a legatee of the aunt and placing the property bequeathed to him from her into his succession; and also recognizing Floy Taylor Baten as his surviving spouse, and, under his testament, entitled to the ownership of all Louisiana property belonging to him.
On October 14, 1977, decedent's sister, Mrs. Ruby Mae Baten Taylor, filed a petition in the Louisiana proceedings, seeking to have the decedent's testament annulled and that portion of the judgment of possession recognizing the wife as decedent's legatee set aside. She alleged that the testament contained a prohibited substitution in violation of Article 1520 of the Louisiana Civil Code, and, as such, should be found to be invalid in Louisiana. She sought to be placed in possession of the property in Louisiana as decedent's sole heir in intestacy.
The matter was tried on a joint stipulation of fact. Judgment was rendered against Mrs. Taylor, rejecting her demands, and she appeals.
The language in the testament that forms the basis of plaintiff's argument is the provision which specifies that Virgil Taylor, Jon Taylor, Dan Taylor, and Bill Taylor are to receive undivided one-fourth interests in the property at the time of the wife's death, provided that she die within thirty days.
Our careful review of Louisiana cases involving substitutions has revealed no case in which a similar provision in a testament was litigated, although it appears that such provisions are frequently found in wills in common law jurisdictions.[1]
We hold that this type of conditional bequest is prohibited under Louisiana law.
At the outset, we find that the first difficulty encountered in the legacy involves our *229 concepts of seizin and le mort saisit le vif. By his very terms, the testator attempted to keep title to his property in abeyance for an indefinite period following his death. Under a literal interpretation of the will, no one would get title to the property until either one of two things occurred: (1) The expiration of thirty days, or (2) The death of the wife. This does not conform to our law on successions.
In Louisiana, the concept of seizin demands that title to succession property vest in an ascertainable and readily indentifiable person from the moment of death. Civil Code Articles 940, et seq. See generally Nathan, Common Disasters and Common Sense in Louisiana, 41 Tulane Law Review, 33, 34-39 (1966); Oppenheim, supra, Section 51.
The Civil Code provides that either the legal heir, testamentary heir, instituted heir, or universal legatee be considered seized of the succession from the moment of death by operation of the law alone. Since the wife is made the universal legatee under the testament, it must be considered that she gets seizin to the property, notwithstanding the attempt of the testator to suspend the title. See Nathan, supra, at pages 36-37.
However, if the wife is considered seized of the property under the testament from the moment of the testator's death, a second difficulty arises because the will then contains a prohibited substitution in violation of Article 1520 of the Civil Code.
Article 1520 provides:
"Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee."
It is generally stated that a prohibited substitution consists of three things:
1. A double disposition of the property in full ownership;
2. A charge imposed on the instituted heir to preserve and transmit the property to the substitute heir; and
3. A successive order such that the property leaves the patrimony of the instituted heir and enters the patrimony of the substitute heir, without any act on the part of the instituted heir.
In an oft-quoted opinion, Succession of Reilly, 136 La. 347, 67 So. 27, 32-33 (1914), the Supreme Court stated:
". . . The essential elements of the prohibited substitution are that the immediate donee is obliged to keep the title of the legacy inalienable during his lifetime, to be transmitted at his death to a third person designated by the original donor or testator. Such a disposition is null even with regard to the original donee or legatee. . . . A substitution is an attempt on the part of the donor or testator to make a testament for his donee or legatee along with his own will, and to substitute his own will for the legal order of succession from his donee or legatee. If permitted, the effect of the substitution would be to tie up the title and keep it out of commerce during the lifetime of the first donee, during which time neither he nor the person designated to receive the title at the donee's death could alienate it."
And in Succession of Simms, 250 La. 177, 195 So.2d 114, 132 (1966), it was stated:
"It is obvious, . . . , that a prohibited substitution exists when a testator places the title of the property bequeathed in the first named legatee (referred to as the instituted heir) at his death, and directs that, at the end of a specified period, usually but not necessarily at the death of the instituted legatee, this title is to be turned over, transmitted, or passed to a second legatee (referred to as the substitute heir), with the result that both parties take their title directly from the testator, the title of the institute being one that he cannot alienate because of the charge that he is to transmit it to the substitute at some time in the future and the title of the substitute *230 being one that the substitute cannot alienate because it does not exist until some date in the future when the property is to eventually `vest' in him. Marshall v. Pearce, 34 La.Ann. 557. In thus indicating a desire to give the property away `twice' to two named legatees, the testator, as pointed out in Succession of Reilly, supra, not only makes his own will, but attempts also to make the will of the instituted legatee, thus endeavoring to determine the law of successions by substituting `his own will * *, For the legal order of succession from his donee or legatee.'"
We think that the disposition in the instant case is properly characterized as a prohibited substitution. The legacy contains a double disposition of the same property; full ownership is left to the wife, but upon her demise within thirty days, it is left to other legatees specified in the will. The wife, as instituted heir, could be said to be burdened with a charge in favor of the second set of substitute heirs. She could not alienate the property in any manner, because if she should die within the thirty day period, the property would have to go to the substitute heirs of the testament. Also present is the establishment of a successive order of beneficiaries. Upon the demise of the wife within thirty days, the property passes from the wife to the second set of legatees without regard to the desire of the wife and without any action on her part.
The testator in this case attempted to control his property for thirty days after his death, for whatever reason. This he could not do.[2] We are loathe to usurp his power to determine the devolution of his property and to frustrate his last wishes by declaring the nullity of the disposition. However, under the mandates and prohibitions of our law, we are given no choice.
There is simply no basis in our law for drawing a distinction between a provision in a will bequeathing property to A and, upon his death, to B, which is the classic prohibited substitution; and a provision bequeathing property to A, and upon his death within thirty days, to B, which is the situation presently before us. If the latter provision would be permissible, Article 1520 and the strong body of jurisprudence developed around it, would be rendered meaningless. A testator could extend the time period to thirty, fifty, or even one hundred years.
It is now well established that the effect of a prohibited substitution is to invalidate the entire disposition, and not merely the charge or direction as to the ultimate disposition of the donation or legacy, as is the situation with the simple fidei commissum. Succession of Walters, 261 La. 59, 259 So.2d 12 (1972). Since the property in Louisiana was stipulated to be separate, it will devolve in accordance with our laws on intestate successions.
The record, as it now stands, is insufficient under the Louisiana Code of Civil Procedure to allow us to declare the sister the sole heir in intestacy of the decedent. The case will be remanded in order that the required procedure can be followed.
For the above reasons, the judgment of the District Court, rejecting the demand of *231 appellant, which seeks to set aside the judgment of possession, is reversed. The judgment of possession rendered by the District Court, insofar as it recognizes Floy Taylor Baten entitled to the ownership and sent into possession of the Louisiana property belonging to the deceased, is also reversed. The case is hereby remanded to the District Court for further proceedings in accordance with law and consistent with the views expressed in this opinion. All costs on appeal are to be borne by the appellee, Floy Taylor Baten.
REVERSED AND REMANDED.
NOTES
[1] Professor Oppenheim of the Tulane Law School states:

"There are two reasons for such a provision: first, successive taxation in rapid succession may be avoided, and second, the property will be transmitted to the testator's heirs rather than in accordance with the other spouse's will."
Oppenheim, 10 Louisiana Civil Law Treatise, Successions and Donations, § 128, p. 252 (1973) [hereinafter cited as Oppenheim].
[2] We note that Professor Oppenheim, in his treatise on successions and donations, reaches conclusions similar to ours. He states:

". . . Under the civil law doctrines of seisin and le mort saisit le vif, the rights of legal heirs vest at the moment of the death of the testator. Therefore, it is not possible to have title in a state of suspense for it must be vested in an identifiable or ascertained owner at all times. This established doctrine has been fully adopted by the Louisiana Civil Code. . . . To illustrate this vesting principle, H would not be permitted to bequeath property to W subject to the provision that if W does not survive him for at least 30 days the property will pass to C. During the thirty day period, the title neither vests in W nor C, thereby leaving the title in a state of suspense. The doctrine of seisin would render such disposition invalid since title must vest in a definite and ascertainable person at the moment of the testator's death. This disposition could also be invalidated on the theory that it is a substitution as prohibited by Article 1520. Such a double liberality appears when H attempts to control the disposition beyond W, his immediate legatee."
Oppenheim, supra, § 128, pp. 252-253 [Footnotes omitted].