386 So.2d 333 (1979)
Floy Taylor BATEN
v.
Ruby Mae Baten TAYLOR.
No. 63660.
Supreme Court of Louisiana.
October 8, 1979.
*334 Thomas J. Sibley, Beaumont, Tex., Gerald LeVan, Baton Rouge, for defendant-applicant.
Raymond A. Beyt, Beyt & Beyt, Lafayette, for plaintiff-respondent.
DENNIS, Justice.
This case presents the question of whether a testator can make a valid will bequeathing his property to his wife, upon the condition that she survive him for thirty days, or, if the condition is not fulfilled, to his nephews.
The testator's sister unsuccessfully attacked the will in the district court and appealed. The court of appeal reversed, holding that the disposition is null because it conflicts with Civil Code Article 1520, which prohibits any disposition constituting a substitution as defined by that article, and Article 1609, which gives the universal legatee seizin of the succession immediately at the testator's death. Accordingly, the intermediate court decreed that the deceased's estate, which was his separate property, must be transferred as an intestate succession, effectively depriving the widow of her husband's property even though she had survived him for thirty days. We reverse, upholding the will, because the double conditional legacy is not a prohibited substitution as defined by the code and does not prevent seizin of the succession immediately at the testator's death.
Decedent, Gordon D. Baten, died testate on February 2, 1974 at his domicile in Beaumont, Texas, leaving separate immovable property situated in Louisiana. He was survived by his widow, Floy Taylor Baten, and his sister, Ruby Mae Baten Taylor. He left no ascendants or descendents.
The testament, valid in form, contains the following dispositive provisions:

*335 2.
I give, devise and bequeath all of my property, real, personal or mixed, wheresoever located to my beloved wife, Floy Baten, should she be living at my death.
3.
In the event my said wife shall have predeceased me, or should my said wife and I die under circumstances that there is not sufficient evidence to determine the order of our deaths or if she shall die within a period of thirty (30) days after the date of my death, then all bequests, devises and provisions made herein to or for her benefit shall be void; and my estate shall be administered and distributed in all respects as though my said wife, Floy Taylor Baten, had predeceased me.
4.
In the event of any of the happenings set forth in paragraph numbered 3 of this my will, I then give, devise and bequeath all of my property, real, personal or mixed, as follows:
(a) An undivided one-fourth (¼) thereof to Virgil Taylor, Box 3283, Radford, Virginia;
(b) An undivided one-fourth (¼) thereof to Jon Taylor, who is the son of Virgil Taylor, and who teaches at the University of Jacksonville, Florida;
(c) An undivided one-fourth (¼) to Dan Taylor, Radford, Virginia;
(d) An undivided one-fourth (¼) to Bill Taylor, who resides in the State of Oregon.
Mrs. Baten survived her husband for thirty days, fulfilling the condition of survivorship. She instituted ancillary probate proceedings resulting in a judgment of possession on January 19, 1977, which recognized her as the surviving spouse of the decedent and, as legatee under his will, entitled to the ownership of all Louisiana property belonging to him.
On October 14, 1977, the decedent's sister, Ruby Mae Baten Taylor, filed a petition of intervention in the ancillary probate proceedings, seeking to annul the will and to have that portion of the judgment of possession recognizing Mrs. Baten's legacy set aside. Mrs. Taylor alleged that, as the decedent's sole intestate heir, she should be placed in possession of all of his Louisiana property, because the legacy to his widow contained a prohibited substitution and was therefore null.
The matter was tried on a joint stipulation of facts. The interpretation and validity of the testament were the only issues presented. After the trial, the district court rejected Mrs. Taylor's attack upon the will and upheld the universal legacy to the widow, Mrs. Baten. Mrs. Taylor appealed to the court of appeal.
The court of appeal, holding that the conditional bequest was prohibited by law, concluded:
At the outset, we find that the first difficulty encountered in the legacy involves our concept of seizin and le mort saisit le vif. By his very terms, the testator attempted to keep title to his property in abeyance for an indefinite period following his death. Under a literal interpretation of the will, no one would get title to the property until either one of the two things occurred: (1) The expiration of thirty days, or (2) [t]he death of the wife. This does not conform to our law on successions.
* * * * * *
However, if the wife is considered seized of the property under the testament from the moment of the testator's death, a second difficulty arises because the will then contains a prohibited substitution in violation of Article 1520 of the Civil Code. 364 So.2d 226, 228-29 (La. App. 3d Cir. 1978).
Preliminarily, we must decide whether the condition attached to the wife's bequest is suspensive or resolutory. The condition of survivorship for thirty days is suspensive under a common sense interpretation, considering the nature and purpose of the clause. The brief period stipulated *336 and the other provisions of the will indicate the testator's intention was to avoid multiple taxes and a transfer of the succession to his wife's heirs if she died closely following him. Thus, the survivorship clause is very similar to standard suspensive conditions employed for these purposes by practitioners in Louisiana and other states. See, Rubin & Rubin, Louisiana Trust Handbook, 164, 177 n. 16 (1968); Oppenheim, 10 Louisiana Civil Law Treatise, Successions and Donations, § 128, p. 252; Atkinson, Atkinson on Wills, 828 (2d ed. 1953); Murphy, 1 Murphy's Will Clauses, 27 (1978). Although the testator's language is ambiguous, we do not think he intended to create the possibility of a vesting of full ownership in his wife for a period of less than thirty days and a subsequent transfer to his nephews.[1]
The issues presented are: (1) whether a double conditional legacy, whereby the first legatee's bequest is subject to a suspensive condition that he survive the testator for thirty days and the second legatee's bequest is conditioned upon the lapse of the first legacy, is a substitution prohibited by Civil Code Article 1520 and (2) whether a universal legacy dependent upon a suspensive condition is in conflict with the rules of seizin.

1. Prohibited Substitution
The double conditional legacy is not a prohibited substitution because it does not: (1) constitute a double disposition, in full ownership, of the same thing to persons called to receive it one after another; (2) impose upon the first beneficiary a charge to preserve and transmit the succession property; and (3) establish a successive order that causes the property to leave the inheritance of the burdened beneficiary and enter into the patrimony of the substituted beneficiary. A prohibited substitution, as defined by Civil Code Article 1520, must have all of these characteristics.
Louisiana Civil Code Article 1520, as amended in 1962, provides:
Substitutions are and remain prohibited, except as permitted by the laws relating to trusts.
Every disposition not in trust by which the donee, the heir, or legatee is charged to preserve for and to return a thing to a third person is null, even with regard to the donee, the instituted heir or the legatee.
The Louisiana State Law Institute, in its report to the Legislature accompanying the Trust Code, explained the essential elements of a prohibited substitution, defined by Civil Code Article 1520, as follows:
The second paragraph of Article 1520 specifies and defines the disposition prohibited in the first paragraph, which is identical with its French counterpart, Article 896, C.N., except for the provisions relating to trusts. It is, for example, a disposition conceived in these terms: "I bequeath my farm Blackacre to Paul, and I charge him to preserve and transmit it at his death to LeDoux."
The constituent characteristics of this prohibited substitution that are implicit in this definition are:
(1) A double liberality, or a double disposition in full ownership, of the same thing to persons called to receive it, one after the other;
(2) Charge to preserve and transmit, imposed on the first beneficiary for the benefit of the second beneficiary;
(3) Establishment of a successive order that causes the substituted property to leave the inheritance of the burdened beneficiary and enter into the patrimony of the substituted beneficiary.
This is in accord with settled French doctrine and jurisprudence, and it is in this sense that the term "substitution" is used in the Civil Code, and by derivation *337 from the Code in the Constitution. Report Trust Code 3A LSA.-R.S. p. XXXIII, XXXVIII (1965).
We are convinced that the Law Institute's interpretation of Article 1520 is correct. As its report indicates, the Article implies the foregoing definition of a prohibited substitution, and the term is used in this sense in French doctrine and jurisprudence. 3 Civil Law Translations, Aubry & Rau § 694, pp. 307-23; 3 Planiol, Civil Law Treatise §§ 3278-83, pp. 593-95. Moreover, the report of the Law Institute is entitled to great weight as reflecting legislative intent in this instance. The Institute, to open the way for a new trust code which it had been instructed to draft by the Legislature, prepared amendments to Article 1520 to clarify the meaning of a prohibited substitution and to remove any obstacle to an effective trust device in Louisiana. See Oppenheim, Trust CodeIntroductory Comment 3A LSA.-R.S. XXVII p. XXIX (1965). The Legislature evidently endorsed the Law Institute's definition of a prohibited substitution by adopting the amendments and enacting the new trust code on the basis of its report.
The definition of a prohibited substitution which we infer from Article 1520, furthermore, is consonant with the original legislative motive for prohibiting substitutions. The reasons assigned for the prohibition are to prevent the making of gratuities to future generations; to prevent property left to an existing generation from being made inalienable, 3 Planiol, supra, § 3197; and to ward off all of the objectionable consequences from such dispositions. See Tucker, Substitutions, Fideicommisa and Trusts in Louisiana Law: A Semantical Reappraisal, 24 La.L.Rev. 439, 454 (1964).
The disposition at issue in the present case has none of the characteristics of a prohibited substitution, as defined by Article 1520. First, it does not make double disposition of the same thing, in full ownership, to persons called to receive it one after another. Since the widow's legacy was subject to a suspensive condition, she would not have received the succession in full ownership if she had failed to survive the testator for thirty days. The second legacy to the nephews was under condition of the failure of the condition of the widow's legacy. As a result of the retroactivity of the condition, the nephews could have received the property only in default of the widow's legacy, not after her.
Second, there was no charge to preserve resting on the first legatee. It is not necessary for the creation of a substitution that the disposer make use of the identical terms found in Article 1520. It suffices that the charge to preserve and to deliver necessarily result from the tenor of the disposition, or, what amounts to the same thing, that it is impossible to execute the disposition without preserving and making restitution of the property given or bequeathed. See, 3 Aubry & Rau, supra, § 694, p. 315. The disposition at issue in the present case, however, by its wording, purpose and tenor, does not imply a charge to preserve. If the suspensive period had been longer, it could be argued that the legacy would be impossible to execute without a charge to preserve. The brief thirty-day suspensive period, however, allows execution of the disposition without this effect.
Finally, for the same reasons that there was no double disposition, the will does not establish a successive order whereby the property could leave the inheritance of the first beneficiary and enter into the patrimony of the substituted beneficiary.
The type of double conditional legacy presented in this case has been approved repeatedly by the French Courts and commentators. French jurisprudence has held that there is no prohibited substitution "when a legacy, though made in full ownership, is made to depend on a suspensive condition, with the clause that in case the condition fails, the thing shall be given to a third person." 3 Aubry & Rau, supra § 694, p. 309. An illustration of this double conditional legacy is the legacy made to Primus on the condition that he marries, or that he marries before a certain age, or that he lives to a certain age, with the stipulation that, if this condition is not accomplished, *338 the property will be bequeathed to Secundus. Tucker, supra, at 481; 3 Aubry & Rau, supra, at 309; 3 Planiol, supra, § 3295, p. 601.
The underlying considerations upon which French jurisprudence has based its approval of such dispositions, according to John H. Tucker, Jr., are as follows:
(1) It constitutes two legacies under a suspensive condition, the first legacy under the condition described in the illustration, the second legacy under the condition of the failure of the condition of the first legacy.
(2) As a result of the retroactivity of the condition, the second legatee (Secundus) is considered as receiving the property not after the first legatee (Primus), but in default of him, and there is no successive order.
(3) There is no real charge to preserve and render resting on the first legatee.
(4) In such a case, the testator will be considered to have bequeathed the usufruct to Primus for the period intervening between his receipt of the legacy and the failure of the condition, even if he has not so specified.
(5) In some instances, the courts have annulled a conditional legacy (e. g., "I bequeath my property to X if he attain 21 years; if he die before that this legacy will fail and be as not written."), as containing a resolutory condition. However, the jurisprudence generally has validated double conditional legacies of the type given in the illustration, where the testator intends to maintain the first legacy, only if the legatee attains a certain age, or accomplishes a fact before a certain age without being concerned with whether the condition is resolutory or suspensive.
* * * * * *
Tucker, supra, at 481-82.
The court of appeal reasoned that, because the disposition in the present case is indistinguishable from a classic substitution, its enforcement would render Article 1520 and the jurisprudence developed around it meaningless. The rationale is based on a faulty postulate, however, because a classic substitution is one which contains all of the characteristics stated or implied by the second paragraph of Article 1520 and listed in the Law Institute's Report. Thus, it is a disposition bequeathing property to A in full ownership, but requiring that he preserve the property and that, upon his death, it be delivered to B in full ownership. Since the disposition at issue in this case contains none of the three characteristics of a substitution, its enforcement does not conflict with Article 1520. Also, as the appellate court recognized, a review of the Louisiana cases reveals none in which a double suspensive conditional legacy was evaluated. The enforcement of the disposition here, therefore, does not conflict with the holdings in our previous opinions.
There is language in some of the cases which, if followed, would nullify conditional donations outside the ambit of Article 1520's strict definition of a prohibited substitution. Many of those decisions may be disregarded as obsolete because they were focused on prohibiting the common law trust in Louisiana, now adopted to some extent in our trust code. See, Succession of Walters, 261 La. 59, 259 So.2d 12, 16 (1972) (Barham, J., concurring); Crichton v. Succession of Gredler, 256 La. 156, 235 So.2d 411, 421 (La.1970) (Sanders, J. dissenting). Fundamentally, however, all of the jurisprudence defining and applying the law of former Article 1520 must be reassessed in light of the amendments by which the Legislature has harmonized our definition of substitutions with French doctrine and the rule that penal and prohibitory laws should be strictly construed. ReportProposed Trust Code 3A LSA-R.S., p. XLI. See, State v. Executors of McDonogh, 8 La.Ann. 171, 230 (1853); Heirs of Cole v. Cole's Executors, 7 Mart.N.S. 414 (1829).
We conclude, for these reasons, that the disposition in the present case is not a substitution prohibited by Article 1520.

2. Seizin
The Civil Code articles pertaining to seizin do not prevent a testator from making *339 a universal legacy subject to a suspensive condition. Immediately after the death of the deceased person, one of three classes of heirs is seized of the succession under the civil code scheme. Seizin is given first to the forced heirs of the deceased. In default of a forced heir, it is given to the universal legatee. Finally, in the absence of a member of the first two classes, the legitimate heirs are seized of the deceased's property. La. Civil Code arts. 887, 915, 940, 1607, 1609, and 1613. Consequently, when there are no forced heirs and the universal legatee has been installed under a suspensive condition, as in the present case, the legitimate heirs acquire seizin, under the codal order of priority, and remain provisionally seized of the succession until the condition is fulfilled. 3 Aubry & Rau, supra, § 719, p. 473; 21 Demolombe, Cours de Code Napoleon, § 561, p. 493; 3 Troplong, Droit Civil Explique des Donations Entre-vifs et des Testaments § 1815, pp. 363-65; Planiol et Ripert, Traite Pratique de Droit Civil Francais § 653, pp. 818-20.
The Civil Code does not expressly or impliedly prohibit a universal legacy subject to a suspensive condition. The Code permits a testator to impose any conditions he pleases, whether suspensive or resolutory, provided they contain nothing contrary to law or good morals. La.Civ.Code arts. 1519, 1527, 1698, and 1699; 3 Aubry & Rau, supra, § 715. It makes no exception in the case of a universal legacy subject to a suspensive condition. To infer from the Code such an exception so as to maintain an immutable hierarchy of seizin would attribute to the lawmakers a bizarre sense of values.[2] Under this interpretation of the law, the Courts would be required to thwart the testator's will by declaring a universal legacy under a suspensive condition null whenever there were no forced heirs, rather than allow seizin to pass to the legitimate heirs. We therefore reject the contention that the redactors of the Code intended to create such an arbitrary restriction on the testator's authority. Congruously, nothing we have found in the French jurisprudence or doctrine suggests that the concept of seizin either restricts or conflicts with the testator's authority to make conditional legacies of all kinds. 3 Civil Law Translations, Aubry & Rau, § 694 n. 7-7 at 311; 3 Civil Law Translations, Aubry & Rau, Ch. 1, Part VII (Of the Permissible or Prohibited Conditions in Matters Pertaining to Intervivos or Testamentary Dispositions) §§ 691-97, pp. 285-358; Part IX (Preservation, Execution and Interpretation of Testaments. The Legacy) §§ 711, 719, and 723, pp. 434, 440, 473, and 484; 4 Civil Law Translations, Aubry & Rau, Ch. III (Of the Transmission of the Inheritance to the Heirs) § 609, pp. 97-106; 3 Planiol, Civil Law Treatise, Ch. III (Fiduciary Bequests or Substitutions) §§ 3265-98, pp. 587-604; Ch. I (Seizin of Heirs by Law) §§ 1929-43A, pp. 601-08.
Furthermore, since the enactment of the Code of Civil Procedure in 1961, the question of whether an heir has seizin is of less practical consequence. Article 3211 of the Code of Civil Procedure provides that the succession representative is deemed to have possession of all property of the succession and shall enforce all obligations in its favor. La.Code Civ.P. art. 3211; Cf. La.Code Civ.P. art. 685. According to the redactors, this provision is a deliberate departure from the former law relating to seizin and, as a practical matter, gives the succession representative full seizin of all the property of the deceased. La.Code Civ.P. art. 3211, Official Revision Comment (a). See generally, Nathan, supra, at 51; Comment, 49 Tul.L.Rev. 1110, 1122 (1975). Consequently, seizin is not suspended by the enforcement of the testator's disposition of his property.
The court of appeal saw the concept of seizin as an obstacle to the enforcement of the will because it mistakenly equated seizin with ownership.[3] Seizin is *340 not ownership, however, but the legal investiture of one class of heirs with possession of the succession upon the death of the deceased, enabling the heirs who acquire seizin, from the instant of death, to bring all the actions which the deceased could have brought. Lazarus, The Work of the Louisiana Appellate Courts for the 1971-72 Term, 33 La.L.Rev. 199, 201-02 (1973); 3 Marcade, Explication Du Code Civil no. 47, at 33 (7th ed. 1873) as cited in Lazarus, supra, at 202 n. 12. Ownership, on the other hand, is transmitted by operation of law at the moment of death to heirs and legatees designated by the Code, regardless of whether they have seizin of a particular succession or whether they can ever have seizin.[4] For example, although a legatee under a particular title cannot acquire seizin, he has ownership of the thing bequeathed to him from the day of the testator's death. La.Civ.Code art. 1626. In order to be eligible for seizin, an heir must be either a forced heir, universal legatee or legitimate heir; and the latter two classes acquire seizin only in default of those preferred to them. Whether an heir acquires seizin depends, therefore, not on his ownership of succession property, but on whether he is a member of the class of heirs entitled to seizin of a particular succession according to the codal order of priority.
The redactors of the Code of 1825 made the distinction between ownership and seizin clear when they adopted the French system of succession, which embodies two different concepts: (1) Ownership rights of the heir are vested from the moment of the death, and (2) seizin, the faculty of claiming and exercising possession, is acquired by either the forced heirs, the universal legatee or the legitimate heirs at the moment of death. Lazarus, supra, at 201; Comment, 49 Tul.L.Rev. 1110, 1111 (1975); 1 Louisiana Legal Archives, Projet of the Civil Code of 1825 at 115. In other words, as Planiol observes:
Seizin has nothing to do with the transfer of property, which takes place immediately, whether it is in favor of heirs who have seizin, or who are deprived of it. It affects only the taking of possession of the estate, which takes place in two forms, one for the property in kind, the other for the rights of action. 3 Planiol, supra § 1938, pp. 604-05.
Accordingly, we conclude that there is no conflict between a suspensively conditional universal legacy and the civil code's seizin provisions. In the present case, the universal legatee having been installed under a suspensive condition, the legitimate heirs acquired seizin at the moment of death under the civil code scheme and remained provisionally seized until the legacy's suspensive condition was fulfilled. Furthermore, the succession representative is given full seizin of the deceased's property, as a practical matter, by Article 3211 of the Code of Civil Procedure. The survivorship clause in the present will, therefore, does not suspend seizin of the succession, but is a valid disposition of ownership subject to suspensive conditions.

Conclusions
The will in the present case contains a disposition made to depend on two suspensive *341 conditional legacies. The disposition is not a prohibited substitution as defined by Louisiana Civil Code Article 1520, and it does not have the effect of suspending seizin of the succession. Accordingly, the testator's will and the universal legacy to his wife are not contrary to law and should be enforced.
The judgment of the court of appeal is reversed and the judgment of the district court is reinstated at plaintiff-appellee's cost.
REVERSED; DISTRICT COURT JUDGMENT REINSTATED.
BLANCHE, J., concurs in result without reasons.
SUMMERS, C. J., dissents for the reasons assigned by the Court of Appeal, 364 So.2d 226.
NOTES
[1] The court of appeal and the opponent of the will agreed with the wife that, literally construed, the thirty-day survivorship proviso attached to the wife's universal legacy is a suspensive condition. Because of their premise that such a suspensive condition would be contrary to law, however, the appeal court and the opponent maintain that the clause should be construed as a resolutory condition. We are not constrained to give the clause this interpretation, however, because we conclude ultimately that their premise is incorrect. We instead view the condition as suspensive to carry into effect the intention of the testator.
[2] Compare, Nathan, Common Disasters and Common Sense in Louisiana, 41 Tul.L.Rev. 33, 36 (1966).
[3] Several well respected Louisiana commentators agree with the Court of Appeal's position. See, Oppenheim, 10 Louisiana Civil Law Treatise, § 128, pp. 252-53; Kelleher, The Marital Deduction Under Louisiana Law, 26 Tul.L.Rev. 154 (1952); Nathan, Common Disasters and Common Sense in Louisiana, 41 Tul.L.Rev. 33 (1966). Their writings were more in the nature of practical advice to the drafters of wills, however, and their counsel to beware of the possible pitfalls of survivorship clauses was good advice given the status of Louisiana jurisprudence and doctrine at that time.
[4] See Lazarus, supra, at 202 where he states:

Although not as clearly formulated as they might have been, the pertinent articles of the Louisiana Civil Code do in effect make this distinction between the actual transmission of the inheritance to the heir, and the possession thereof which is rightfully deemed to be in the legitimate heir, although not actually so. Thus, article 940 speaks of the acquisition of the inheritance by the heir immediately upon the death of the deceased, whereas articles 942 and 943 speak of the possession thereof which is continued in the person of the heir "with all its defects as well as all its advantages, the change of proprietor producing no alteration in the nature of the possession." (footnotes omitted).
See also La.Civ.Code arts. 870, 871, 1626 and cf. art. 949.